Emmett GARRICK, et al., Respondents,

v.

**NORTHLAND INSURANCE COMPANY, Appellant,**

**Athena Assurance Company, The Omaha Indemnity Company, Respondents.**

No. C0–90–100.

Court of Appeals of Minnesota.

Oct. 2, 1990.

Review Granted Dec. 14, 1990.

Louise A. Dovre, David M. Bolt, Rider, Bennett, Egan & Arundel, Minneapolis, for Northland Ins. Co.

Robert C. Falsani, James B. Peterson, Falsani, Balmer, Berglund & Merritt, Duluth, for Emmett Garrick, et al.

Charles A. Bateman, Eric D. Hylden, Halverson, Watters, Bye, Downs, Reyelts & Bateman, Ltd., Duluth, for Athena Assur. Co.

Dexter O. Corliss, Hagglund Law Firm, Minneapolis, for the Omaha Indem. Co.

Considered and decided by PARKER, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

FORSBERG, Judge.

Respondents Emmett and Kathleen Garrick (Garricks) brought a declaratory judgment action, seeking construction of the terms of insurance policies issued by appellant Northland Insurance Company (Northland) and respondents Athena Assurance Company (Athena) and the Omaha Indemnity Company (Omaha). Following trial, the court concluded the Garricks were entitled to no-fault personal injury protection benefits from Northland and Athena on a pro rata basis, and that the policy issued by Omaha does not provide no-fault personal injury protection (PIP) benefits. The court also concluded the Garricks were entitled to uninsured motorist (UM) benefits first from the Athena policy, second from the Northland policy, and third from the Omaha policy. Finally, the court determined the priority of the coverages. In an amended judgment, the court set out specific dollar amounts for each level of coverage. The Garricks' subsequent motion for attorney fees was denied.

Northland appeals, and the Garricks and Athena seek review.

## FACTS

In April 1984, Emmett Garrick purchased a 1958 Hendrickson tractor ("tractor") from Donald Youngdahl, d/b/a D & D Transport. The parties signed an agreement leasing the tractor back to Youngdahl and allowing Garrick to use Youngdahl's public service commission authority. Garrick used Youngdahl's trailers and paid Youngdahl 10 percent of the income from whatever Garrick hauled.

At the time he sold the tractor to Garrick, Youngdahl was covered under an insurance policy with Northland effective October 1983 to October 1984. When Youngdahl obtained this policy, he listed the tractor on the schedule of covered automobiles. After the sale of the tractor to Garrick,

Youngdahl did not request the tractor be removed from his fleet policy with Northland.

Youngdahl and Garrick agreed for Garrick to provide insurance on the tractor. Youngdahl suggested Garrick contact Duane Wolff, Youngdahl's insurance agent, for insurance. When Garrick met with Wolff, Garrick stated he purchased the tractor from Youngdahl and Wolff should take it off Youngdahl's policy because he would be insuring it. Wolff obtained insurance for Garrick through Athena. Wolff, however, did not delete the tractor from Youngdahl's Northland policy.

On October 17, 1984, Garrick drove the tractor from Duluth to St. Cloud to drop off a load of steel. He was pulling a trailer owned by Youngdahl. While Garrick was returning with the empty trailer to Duluth, he was involved in an accident. Garrick testified a car swerved in front of him and stopped. Garrick was able to avoid the car with the tractor, but Youngdahl's trailer struck the stopped car. Garrick alleges the stopped car was uninsured and he sustained personal injuries in the accident. The trailer which struck the car was listed on Youngdahl's Northland fleet policy. The tractor was listed as an insured vehicle on both the Athena policy obtained by Garrick and on Youngdahl's Northland fleet policy.

Following the accident, Athena paid PIP benefits submitted by Garrick. Athena also admitted its obligation to pay UM benefits. Garrick commenced this action to obtain PIP benefits under the Athena and Northland policies, UM benefits under the Athena and Northland policies, and benefits under a policy issued by Omaha on Garrick's personal automobiles. During the course of this action, Athena asserted Northland's UM coverage preceded Athena's in priority. Athena also asserted Northland was obligated to provide PIP benefits and Northland's and Athena's PIP obligations should be shared pro rata. When the matter came on for trial, Northland, Athena and Omaha stipulated that Omaha did not provide PIP benefits for Garrick's accident.

At trial, Northland sought to amend its pleadings to add a claim that its policy should be reformed to eliminate coverage for the tractor. The trial court did not permit the amendment, but indicated Northland could pursue this reformation theory as part of a reasonable expectations claim.

At trial, only Garrick testified. The deposition testimony of Youngdahl, Wolff and Garrick was also submitted. In his deposition, Wolff testified he did not recall being asked by Youngdahl to delete the tractor from the Northland policy. If such a request had been made, Wolff testified, there would have been a memo in the file concerning the request. There was no such memo. Wolff knew Garrick bought a tractor from Youngdahl, but thought Youngdahl may have had more than one Hendrickson tractor.

In his deposition, Youngdahl testified he would not have wanted to continue insuring the tractor after Garrick bought it. Youngdahl did not recall asking Wolff to remove the tractor from the policy, and he was not sure whether his wife had done so.

In its findings of fact, conclusions of law and order for judgment, the trial court concluded Garrick is entitled to PIP benefits from Northland and Athena on a pro rata basis, and to no PIP benefits from Omaha. The court also determined Garrick is entitled to UM coverage first from Athena, second from Northland, and third from Omaha. Finally, the court determined the policies could be stacked as follows:

(a) Northland's coverage on the involved trailer;

(b) Athena's coverage on the involved tractor;

(c) Northland's coverage on the involved tractor;

(d) Northland's fleet coverage; and

(e) Omaha's coverage on Garrick's personal vehicles.

In amended conclusions, the court determined Garrick had UM coverage under all three policies. The court then determined the policies could be stacked as follows:

(a) Northland's coverage on the involved trailer in the amount of $50,000;

(b) Athena's coverage on the involved tractor in the amount of $50,000;

(c) The remaining Northland fleet coverage in the amount of $200,000; and

(d) Omaha's coverage on Garrick's personal vehicles.

Following entry of the amended judgment, the Garricks moved for attorney fees. The trial court denied this motion.

Northland appeals. The Garricks have filed a notice of review, contending the trial court erred in denying their motion for attorney fees. Athena has also filed a notice of review, contending all $250,000 of the Northland policy's UM coverage is primary to any UM obligation of Athena.

## ISSUES

1. Did the trial court err in refusing to reform the Northland policy to delete coverage for the tractor?

2. Did the trial court err in determining Northland and Athena are liable for the Garricks' PIP benefits on a pro rata basis?

3. Did the trial court err in determining that the Northland policy's UM coverage on the involved trailer is primary?

4. Is Garrick entitled to UM coverage on all of Youngdahl's vehicles insured under the Northland fleet policy?

5. Are the Garricks entitled to attorney fees?

## ANALYSIS

1. *Reformation*

The parties did not address whether Youngdahl retained an insurable interest in the tractor. Youngdahl and Emmett Garrick entered into a lease agreement. Pursuant to Minn.Stat. § 65B.43, subd. 4 (1984), when a motor vehicle is the subject of a lease with an initial term of six months or longer, the lessee is deemed the owner for purposes of the No–Fault Act. This lease does not specify an initial term, and the trial court found the parties paid little attention to the terms in the preprinted lease. Since the parties have not raised or briefed the issue, we assume Youngdahl

retained a sufficient insurable interest to allow the Northland policy to remain effective as to the tractor.

■ A written agreement can only be reformed in a proper action between parties to the agreement. *See Citizen's Mut. Auto. Ins. Co. v. Downing*, 339 Mich. 434, 64 N.W.2d 660 (1954). The insurance policy Northland seeks to reform was between Youngdahl and Northland. Because Youngdahl was not made a party to the present action, the trial court did not err in refusing to reform the contract.

■ In addition, two of the elements justifying reformation are not present in this case. A written instrument can be reformed by a court when the following elements are present:

(1) there was a valid agreement between the parties expressing their real intentions;

(2) the written instrument failed to express the real intentions of the parties; and

(3) this failure must be due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

*Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn.1980). The evidence establishing these elements must be clear and consistent, unequivocal and convincing. *Id.* The mistake must have occurred through the reduction of the parties' intentions to writing. *American Employers Ins. Co. v. St. Paul Fire & Marine Ins. Co., Ltd.*, 594 F.2d 973, 977 (4th Cir.1979) (quoting 13A Appleman, Insurance Law and Practice § 7608 (1976)).

■ Here, there is no evidence that the insurance policy failed to express the real intentions of the parties. At the time the agreement was reduced to writing, Northland intended to insure the tractor Youngdahl then owned. Similarly, at that time, Youngdahl intended to obtain insurance on the tractor. The policy, as drafted, reflected the parties' intentions.

Nor was there any evidence of a mutual mistake of the parties. While it is clear Youngdahl did not intend to continue insur-

ing the tractor after he sold it to Garrick, there was no evidence Northland no longer intended to insure it. Northland's agent, Wolff, may have known the tractor was transferred from Youngdahl to Garrick, but he apparently did not know the tractor was to be deleted from Youngdahl's policy. At least he did not recall receiving such notice. Although Garrick claims to have told Wolff the tractor was to be deleted from Youngdahl's policy, Garrick had no authority to alter a contract between Northland and Youngdahl. Thus, there was no mutual mistake.

■ At trial, Northland indicated its reformation argument was closely tied to the doctrine of reasonable expectations. The reasonable expectations doctrine was adopted in Minnesota in *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271 (Minn.1985). This doctrine is a recognition of the inequality in bargaining power of insurers and insureds. *Id.* at 277; *see* Keeton, *Insurance Law Rights at Variance With Policy Provisions*, 83 Harvard L.Rev. 961, 967 (1970). The doctrine therefore has no applicability in this case where the party with superior bargaining power is the party invoking its protection.

### 2. Stacked PIP Benefits

■ Northland contends Garrick is excluded as an insured under the terms of its policy and is therefore not entitled to stacking basic economic loss benefits regardless of whether the prerequisites for stacking an insured's benefits are present. *See Wallace v. Tri–State Ins. Co.*, 302 N.W.2d 337, 339 (Minn.1980). Respondents contend Northland's claimed exclusionary clause is void.

The Northland policy contains the following exclusion regarding no-fault benefits:

This coverage does not apply * * *

(d) to bodily injury sustained by any person, other than the named insured or relative, if such person is entitled to personal injury protection coverage as a self-insured or as a named insured or relative under the terms of any other policy with respect to such coverage * * *.

As with other contracts, insurance policies are matters of agreement by the parties. In construing an insurance contract, it should be remembered

> that parties are free to contract as they desire, and so long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes, the extent of the insurer's liability is governed by the contract entered into.

*American Family Mut. Ins. Co. v. Ryan*, 330 N.W.2d 113, 115 (Minn.1983); *see also Streich v. American Family Mut. Ins. Co.*, 358 N.W.2d 396, 399 (Minn.1984).

The Northland policy's exclusion does not eliminate any coverage required by law. The exclusion can only come into effect when the insured has other insurance applicable to the vehicle. *See Iverson v. State Farm Mut. Auto. Ins. Co.*, 295 N.W.2d 573, 575 (Minn.1980). Similar exclusions have been upheld by this court. *See Ryan v. Progressive Casualty Ins. Co.*, 386 N.W.2d 837, 840 (Minn.App.1986), *pet. for rev. denied* (Minn. July 31, 1986); *Gaalswyck v. General Casualty Co. of Wis.*, 372 N.W.2d 435 (Minn.App.1985), *pet. for rev. denied* (Minn. Oct. 24, 1985). The trial court should have given effect to the Northland exclusion. The court therefore erred in requiring Northland to provide pro rata PIP benefits.

### 3. *Priority of UM Coverages*

■ The trial court determined Garrick is entitled to UM coverage first from Athena, second from Northland, and third from Omaha. "The first step in apportioning coverage where more than one insurer covers the loss is to determine if the apportionment among insurers can be made without violating the terms of any of the insurance policies." *State Farm Mut. Auto. Ins. Co. v. Zurich Ins. Co.*, 439 N.W.2d 751, 754 (Minn.App.1989) (citing *Integrity Mut. Ins. Co. v. State Auto. & Cas. Underwriters Ins. Co.*, 307 Minn. 173, 175, 239 N.W.2d 445, 446 (1976)). Omaha's pro rata "other insurance" provision was deleted. The Athena and Northland policies contain functionally identical "other insurance" clauses which remained in effect. The ab-

sence of an "other insurance" clause leaves Omaha as the primary UM carrier.

The Athena and Northland policies provide "primary insurance for any covered auto you own and excess insurance for any covered auto you do not own." At the time of the accident, the tractor was owned by Garrick and leased by Youngdahl. While the involved trailer was owned by Youngdahl, the Northland policy did not provide UM coverage for Youngdahl's trailers. Accordingly, it is possible to apportion coverage without violating the terms of either policy. The Athena policy provides secondary UM coverage on the tractor which is the covered auto its insured, Garrick, owned. The Northland policy provides tertiary coverage on the tractor which is the covered auto its insured, Youngdahl, did not own.

We therefore reverse the trial court's determination and conclude Omaha provides primary, Athena secondary and Northland tertiary UM coverage.

### 4. *Northland's UM Liability*

■ The Northland policy contained the following endorsement:

> C. Paragraph 1 of OUR LIMIT OF LIABILITY is changed to read:
>
> 1. Regardless of the number of insureds, claims made or vehicles involved in the accident the most we will pay for all damages resulting from any one accident is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations. If there is more than one covered auto our limit of liability for any one accident is the sum of the limits applicable to each covered auto.

Both this court and the Minnesota Supreme Court have analyzed the language of similar endorsements on several occasions. Both courts have determined that the language of the endorsement permits the insured to multiply the limit of UM coverage by the number of vehicles insured. *See Rusthoven v. Commercial Standard Ins. Co.*, 387 N.W.2d 642 (Minn. 1986); *Liberty Mut. Ins. Co. v. Crow*, 451 N.W.2d 898 (Minn.App.1990).

In *Rusthoven*, the court noted that the result of permitting multiplication of the

UM coverage by the number of vehicles insured must not exceed the reasonable expectations of the insured. *Id.,* 387 N.W.2d at 645. There is little evidence in this case regarding the parties' reasonable expectations. Youngdahl and Wolff had only vague memories of their intentions. Wolff testified there is no specific intention in insuring commercial vehicles, and the insured simply presents a list of covered vehicles. Given this, we cannot conclude the trial court erred in concluding Garrick is entitled to UM coverage on all of the vehicles insured under the Northland fleet policy. *Cf. Curtis v. Home Ins. Co.,* 392 N.W.2d 44, 46 (Minn.App.1986) (where evidence clearly shows insured intended maximum amount of underinsured motorist coverage for any one accident would be limited to $50,000, trial court erred in multiplying coverage by number of vehicles covered by policy).

Northland also argues its UM coverage cannot be stacked in this case because Garrick was not an insured as to each vehicle on the Northland policy. *See Murphy v. Milbank Mut. Ins. Co.,* 388 N.W.2d 732 (Minn.1986). This argument is without merit. There is no stacking involved. The endorsement provides, by its own terms, a single limit of UM coverage without any need to resort to stacking principles. *See Crow,* 451 N.W.2d at 900.

### 5. *Attorney Fees*

Attorney fees may be recovered by an insured in a declaratory judgment action when the insured is seeking first party benefits, as the Garricks are doing here. *Wondra v. American Family Ins. Group,* 432 N.W.2d 455 (Minn.App.1988), *pet. for rev. denied* (Minn. Jan. 25, 1989). We therefore reverse the trial court's refusal to award attorney fees, and remand for an appropriate award.

## DECISION

The trial court did not err in refusing to reform the Northland policy, and the doctrine of reasonable expectations is inapplicable to Northland's reformation action. The trial court erred in requiring Northland to provide pro rata PIP benefits. The trial court erred in its determination of priority of UM coverages; Omaha must provide primary UM coverage with Athena providing secondary coverage and Northland providing tertiary coverage. The Northland UM coverage is a single limit of liability. The matter is remanded to the trial court for an appropriate award of attorney fees.

Affirmed in part, reversed in part and remanded.