**EMPIRE FIRE AND MARINE INSURANCE COMPANY, Appellant,**

v.

**Mary CARLSON, et al., Respondents.**

**No. C4–91–756.**

Court of Appeals of Minnesota.

Oct. 29, 1991.

Richard S. Stempel, Jeffrey J. Lindquist, Pustorino, Pederson, Tilton & Parrington, Minneapolis, for appellant.

John V. Geisheker, Anderson & Geisheker, Minneapolis, for respondents.

Considered and decided by DAVIES, P.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Appellant Empire Fire and Marine Insurance Company commenced a declaratory judgment action against its insureds, respondents Mary and Dawn Carlson, seeking a determination that Empire need not pay no-fault medical benefits for injuries sustained by Dawn. Empire relied on an intentional injury exclusion in its policy and in the Minnesota No–Fault Act. The declaratory judgment action was tried to a jury, which determined Dawn did not intentionally injure herself. Counsel for the

Carlsons then moved the trial court for an award of attorney fees under the Declaratory Judgments Act, Minn.Stat. §§ 555.01–.16 (1990). Empire has appealed the trial court's award of $8,818.75 in attorney fees. We reverse.

## FACTS

On May 5, 1987, Tracy Groen, then 15, met with a group of friends in Renville, Minnesota. Groen was in a car with Phil Champagne and Corrie Mulder. As Groen drove past the stockyards in Renville, a group of high school classmates, including Linda Johns and Dawn, shouted to Groen to come and talk to them. Groen drove into the stockyards to talk to Dawn and Johns. Johns was apparently upset about an incident that occurred earlier in the day and wanted Groen to get out of the car and fight. Groen refused to do so. After Groen repeatedly refused to get out of the car to fight, Dawn sat on the hood of Groen's car. While Dawn was sitting on Groen's car, Groen decided to leave the stockyards.

Groen first backed up and then proceeded to the street in front of the stockyards. As Groen turned at the street, Dawn either jumped or slid off the hood of Groen's car. When Dawn fell off the hood of the Groen car, she rolled on the street and was knocked unconscious. As a result of this incident, Dawn claims to have lost the hearing in one ear, to have recurring headaches, and to have lower back pain.

The bills for Dawn's medical expenses were submitted to Empire, the Carlsons' no-fault carrier. Empire refused to pay the bills, contending Dawn's injuries were excluded by an intentional injury exclusion in the policy. The exclusion barred payment of no-fault coverage which

> any person would otherwise be entitled to receive hereunder for bodily injury intentionally caused by such person or arising out of his intentionally attempting to cause bodily injury * * *.

The Carlsons denied that Dawn's injuries arose out of any attempt by Dawn to injure herself or Groen.

The matter proceeded to a jury trial. In a pretrial order, the trial court determined that the only issue for the jury's consideration was whether there was an intentional injury. The jury returned a special verdict in which it found Dawn did not intentionally jump from or leave the hood of the Groen car. This determination precluded a finding that Dawn intended to injure herself or others.

Subsequently, counsel for the Carlsons sought an award of attorney fees pursuant to Minn.Stat. §§ 555.01–.16. The motion for attorney fees did not cite any other authority for an award of fees. The trial court awarded $8,818.75 in attorney fees, and Empire has appealed.

## ISSUE

Did the trial court err in awarding attorney fees to counsel for the Carlsons?

## ANALYSIS

■ Historically, absent a contractual or statutory provision authorizing an award of attorney fees, the parties to litigation were responsible for their own attorney fees. *Lanoue v. Fireman's Fund Am. Ins. Cos.*, 278 N.W.2d 49, 54 (Minn.1979). An exception to the general rule arose when an insurer wrongly refused to *defend* its insured and the insured was obligated to bring suit against the insurer to force the insurer to provide a *defense. Morrison v. Swenson*, 274 Minn. 127, 142 N.W.2d 640 (1966). The Minnesota Supreme Court has consistently limited the *Morrison* exception to situations in which the insurer wrongfully fails to defend its insured. *See Rent–A–Scooter, Inc. v. Universal Underwriters Ins. Co.*, 285 Minn. 264, 173 N.W.2d 9 (1969); *Olsen v. Preferred Risk Mut. Ins. Co.*, 284 Minn. 498, 170 N.W.2d 581 (1969); *Abbey v. Farmers Ins. Exch.*, 281 Minn. 113, 160 N.W.2d 709 (1968).

This court created a second exception to the general rule in *Wondra v. American Family Ins. Group*, 432 N.W.2d 455 (Minn. App.1988), *pet. for rev. denied* (Minn. Jan. 25, 1989). In *Wondra*, this court noted that Minn.Stat. § 555.08 (1988) provides, "further relief based on a declaratory judg-

ment or decree may be granted whenever necessary or proper." *Id* at 460. This court construed "further relief" to include an award of attorney fees. *Id.* Subsequently, this court, relying on *Wondra*, awarded attorney fees in an action commenced to determine the priority of three policies of insurance which provided uninsured motorist benefits. *Garrick v. Northland Ins. Co.*, 460 N.W.2d 920 (Minn. App.1990). The Minnesota Supreme Court granted further review of *Garrick* on December 14, 1990. The trial court's award of attorney fees here was made while *Garrick* was pending before the supreme court.

This appeal was filed May 1, 1991. On May 31, 1991, the Minnesota Supreme Court reversed this court's *Garrick* decision. *Garrick v. Northland Ins. Co.*, 469 N.W.2d 709 (Minn.1991). In reversing, the supreme court stated:

> To the extent that the court of appeals' decision in [*Wondra*] is contrary to our decision here as to attorney fees, that holding is overruled.

*Garrick*, 469 N.W.2d at 714 n. 2.

The Carlsons seek to distinguish *Garrick* by pointing out that in *Garrick* the insured sued the insurers, while in the present case, the insurer sued the insured. The holding of *Garrick*, however, is that the *Morrison* exception to the general rule regarding payment of attorney fees will not be expanded to include claims for first-party coverage.

The supreme court stated:

> While there is great equity in plaintiffs' request for attorney fees, we decline to extend the award to cover attorney fees beyond the typical *Morrison*-type exception, *i.e.*, fees incurred as a direct loss incident to the breach of a contractual duty to defend. * * * If the change in Minnesota's historical doctrine is to be made, it seems to us that this argument ought to be directed to the legislature.

*Garrick*, 469 N.W.2d at 714 (citation and footnote omitted). We note that the bills introduced in the legislature which eventually became the Minnesota No–Fault Act contained provisions authorizing awards of attorney fees to insureds in the Carlsons' position. S.F. 96, § 24, subd. 1; H.F. 151, § 24, subd. 1 (1973 session). These provisions were not enacted.

■ The Carlsons argue the award of attorney fees can be sustained under Minn. R.Civ.P. 11 and Minn.Stat. § 549.21 (1990). Neither Rule 11 nor section 549.21 was argued in the trial court as providing a basis for an award of attorney fees. This court's review is limited to those issues which the record establishes were presented to and considered by the trial court in making its decision. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). The claim that the award can be sustained under Rule 11 or section 549.21 is not properly before this court.

■ In addition, the procedural requirements for asserting a claim for attorney fees under Minn.R.Civ.P. 11 were not complied with in the present case. In discussing Rule 11 sanctions, the Minnesota Supreme Court has stated:

> To facilitate an orderly and uniform approach to the imposition of sanctions, we are of the view that certain minimum procedural guidelines must be established. First, the attorney or party must have fair notice of both the possibility of a sanction and the reason for its proposed imposition. *Donaldson v. Clark*, 819 F.2d 1551, 1559–60 (11th Cir.1987). Since one of the primary purposes of Rule 11 is to deter litigation abuse, this notice should be given as early as possible during the proceedings to provide the attorney and party the opportunity to correct future conduct. A policy of deterrence "is not well served by tolerating abuses during the course of an action and then punishing the offender after the trial is at an end." [*In re Yagman*, 796 F.2d 1165, 1183 (9th Cir.1986), *modified*, 803 F.2d 1085 (9th Cir.1986), *cert. denied*, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987)]. Only in very unusual circumstances will it be permissible for the trial court to wait until the conclusion of the litigation to announce that sanctions will be considered or imposed.

Similarly, a party intending to seek sanctions should notify the court and other parties with specificity of that intention. *Uselman v. Uselman,* 464 N.W.2d 130, 143 (Minn.1990).

■ Furthermore, in a pretrial order, the trial court determined there was an issue for jury determination. A party who survives pretrial motions to dismiss and for summary judgment should not be subject to sanctions after trial on the surviving claims. *Uselman,* 464 N.W.2d at 144. In the present case, no motion to dismiss or for summary judgment was brought by the Carlsons; however, Empire's sole claim was tried to a jury.

Finally, the Carlsons contend Empire's use of a declaratory judgment action to decide an issue that could have been decided in arbitration constitutes bad faith, justifying an award of attorney fees under Minn.Stat. § 549.21. Empire's use of a declaratory judgment action to resolve this issue, although inefficient and expensive, does not appear to rise to the level of conduct necessary to justify an award of fees under section 549.21. *See Hansen v. American Nat'l Bank,* 396 N.W.2d 642 (Minn.App.1986).

■ Moreover, no claim was *ever* made in the trial court that Empire had acted in bad faith. In reviewing an award of attorney fees, this court may consider the failure of the party seeking such an award to limit the fees incurred. *See Wicker v. City of Maplewood,* 386 N.W.2d 327, 329–30 (Minn.App.1986) (eliminating from an award of attorney fees those fees which could have been avoided by moving to dismiss a "patently frivolous" claim prior to trial). In the present case, the Carlsons' counsel *stipulated* to a stay of arbitration but now contends arbitration should have been used.

## DECISION

The award of attorney fees is reversed.

Reversed.