*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1294**

Antler Ridge, LLC, et al.,
Appellants,

vs.

Citizens State Bank-Midwest,
Respondent,

Perry Hillman,
Defendant.

**Filed July 21, 2014
Affirmed; motion granted
Bjorkman, Judge**

Beltrami County District Court
File No. 04-CV-12-3351

Gregory M. Miller, Jennifer Kolias, Siegel Brill, P.A., Minneapolis, Minnesota (for appellants Antler Ridge, LLC, Bruce E. Peterson, Elizabeth E. Stewart-Peterson)

Stephanie A. Ball, Eric S. Johnson, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, Minnesota (for respondent Citizens State Bank-Midwest)

Considered and decided by Bjorkman, Presiding Judge; Smith, Judge; and Reyes, Judge.

# U N P U B L I S H E D   O P I N I O N

**BJORKMAN**, Judge

Appellants challenge summary judgment and the award of sanctions in respondent's favor, also asserting that the district court abused its discretion by denying

their motion to amend the complaint and their motion for a continuance. Respondent moves to dismiss the appeal in part, arguing that appellants' release of their claims against defendant Perry Hillman also releases their claims against respondent. We affirm and grant respondent's motion.

## FACTS

Appellants Bruce Peterson and Elizabeth Stewart-Peterson formed appellant Antler Ridge LLC (collectively, the Petersons) to purchase property from respondent Citizens State Bank-Midwest. The property, described as 1013 and 1015 W. 15th Street and 1801 Norton Avenue in Bemidji, is adjacent to the Petersons' residence and business.

Bank officer Perry Hillman marketed the property to the Petersons as an investment that would provide rental income. To demonstrate the investment's viability, Hillman showed the Petersons two rental permits that were held by the prior owner, Dave Burba. In late March, Hillman sent the Petersons a written offer and purchase agreement to sell the property for $443,900. Hillman also sent a confirming e-mail stating that the purchase price would be "$443,900 + or − a little." Elizabeth Stewart-Peterson responded that the offer was appealing, and the sale closed on April 21. The Petersons did not sign the purchase agreement, but they executed numerous documents in connection with the purchase, including: a mortgage; a promissory note for $515,000 (first note); a disbursement request and authorization listing a loan to "[p]urchase real estate and rental homes and barn," and specifying that $423,900 of the first note would be disbursed to Sathre Title and classifying the remaining $91,100 as "Undisbursed Funds"; and a promissory note for $20,050 (down-payment note). The Petersons later borrowed

2

additional funds and signed notes with the bank for $75,000 (second note), $40,550 (third note), and for $35,998.21 (fourth note).[1]

The Petersons attempted to obtain two rental permits from the city, but the city advised them the property must be subdivided with separate sewer and water services to support two permits. The Petersons began conducting the required repairs, but their available funds became depleted. The Petersons made some of their loan payments but soon fell behind.

On October 2, 2012, the Petersons sued the bank and Hillman, alleging claims of fraud, civil theft, conversion, and unjust enrichment, and seeking injunctive relief. The bank counterclaimed seeking to collect the amounts owing under three of the notes. The bank moved for summary judgment on all claims, and sought sanctions under Minn. Stat. § 549.211 (2012). The Petersons requested a continuance to conduct discovery, which the court denied. The district court granted the bank's motion, dismissing the Petersons' claims, entering judgment on the counterclaims in the amount of $210,460.08, and awarding $28,782.53 in sanctions against the Petersons, with $5,000 of the award owed jointly and severally with their second attorney, Benjamin Tarshish, and his law firm, Tarshish Cody, PLC. After judgment was entered, the Petersons moved to amend their complaint. The district court denied their motion, and the Petersons appealed the

---

[1] Bruce Peterson and Elizabeth Stewart-Peterson personally signed the down-payment note, the third note, and the fourth note. They signed the first note and the second note on behalf of Antler Ridge.

dismissal of their fraud claim, the judgment in favor of the bank on its counterclaims, and the denial of their motion to amend their complaint.[2]

During the pendency of the appeal, the Petersons settled their claims against Hillman, executing a "Pierringer Release and Indemnity Agreement." The release extends to all existing and future claims arising out of or related to this action. The bank moves this court to dismiss the Petersons' appeal of the summary judgment and denial of their motion to amend the complaint on the ground that release of the claims against the bank's agent effectively releases all claims against the bank.

## D E C I S I O N

I. **By releasing their claims against Hillman, the Petersons released their claims against the bank.**

A *Pierringer* release "allows a plaintiff to release a settling defendant and to discharge a part of the plaintiff's cause of action [against that defendant] while reserving the balance of the cause of action against the nonsettling defendants." *Reedon of Faribault, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.*, 418 N.W.2d 488, 490 (Minn. 1988); *see also Frey v. Snelgrove*, 269 N.W.2d 918, 922 (Minn. 1978) (approving use of *Pierringer* release). The basic elements of a *Pierringer* release are:

> (1) The release of the settling defendants from the action and the discharge of a part of the cause of action equal to that part attributable to the settling defendants' causal negligence;

---

[2] The bank requests that we strike portions of the Petersons' supplemental record that are outside the district court record. The bank did not make its request in a separate motion, as required by Minn. R. Civ. App. P. 127. But a motion to strike is moot when we do not rely on the challenged materials. *See Drewitz v. Motowerks, Inc.*, 728 N.W.2d 231, 233 n.2 (Minn. 2007). Since the supplemental materials are not necessary for the appeal, we decline to consider the motion.

4

(2) the reservation of the remainder of plaintiff's causes of action against the nonsettling defendants; and (3) the plaintiff's agreement to indemnify the settling defendants from any claims of contribution made by the nonsettling parties and to satisfy any judgment obtained from the nonsettling defendants to the extent the settling defendants have been released.

*Graff v. Robert M. Swendra Agency, Inc.*, 800 N.W.2d 112, 115 n.3 (Minn. 2011). A *Pierringer* agreement does not release direct claims against non-settling parties. *Kellen v. Mathias*, 519 N.W.2d 218, 223 (Minn. App. 1994). But when an agent is released from liability under a *Pierringer* agreement, the principal is also released from vicarious liability for the agent's conduct, even if the release expressly reserves claims against the principal. *Booth v. Gades*, 788 N.W.2d 701, 707 & n.6 (Minn. 2010); *Reedon*, 418 N.W.2d at 490.

The bank moves to dismiss the Petersons' appeal of the summary judgment dismissing claims presented in the original complaint and the order denying their motion to amend the complaint because all of the claims are based on Hillman's alleged misrepresentations. The Petersons argue that the bank is directly liable on their fraud claim and the claims asserted in the proposed amended complaint.

Our review of the complaint reveals that the Petersons' fraud claim is premised on statements Hillman made to them about the prior owner's ability to rent out the property. The complaint alleges that "Defendant Hillman presented to Plaintiffs what appeared to be authentic rental permits for the property and supported such authenticity with a story that such permits were procured from the City of Bemidji with Defendant Citizens money" and that they relied on this false representation. The Petersons do not dispute

5

that Hillman was acting as the bank's agent when he made the statement. *See Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 535 (Minn. 1992) (explaining the doctrine of vicarious liability makes a principal liable for acts its agent commits in the course and scope of the agency that are not for a purpose personal to the agent). And they do not allege that any other bank employee made false representations to them in connection with the sale of the property. Because their fraud claim is solely based on Hillman's misrepresentation on behalf of the bank, the Petersons' release of their claims against Hillman also releases the fraud claim against the bank. *See Campbell v. Ins. Serv. Agency*, 424 N.W.2d 785, 790 (Minn. App. 1988) (holding that release of agent by *Pierringer* agreement relieved insurer from vicarious liability arising out of a misrepresentation made by the agent as to availability of flood insurance for insureds' property).

The proposed amended complaint seeks contract rescission, vacation of the foreclosure sale, quiet title, and an accounting and damages for contract breach. The Petersons assert that these claims seek relief only against the bank because they are contract-based and Hillman was not a party to the contract. We are not persuaded. Our review of the proposed amended complaint shows the claims are based on Hillman's statements and conduct that induced the Petersons to purchase the property and borrow money from the bank. Because the Petersons released Hillman from liability for all existing and future claims, the bank is also released from liability for the claims asserted in the Petersons' proposed amended complaint.

6

In sum, we conclude that the Petersons' release of existing and future claims against Hillman releases all claims against the bank. Accordingly, we grant the bank's motion. The scope of the appeal is limited to summary judgment on the bank's counterclaims and the sanction award.

## II.     The district court did not abuse its discretion by denying the Petersons' request to continue the summary-judgment motion.

A party opposing summary judgment may ask the district court to continue the motion to permit additional discovery. Minn. R. Civ. P. 56.06. A party seeking a continuance must file an affidavit that is "specific about the evidence expected, the source of discovery necessary to obtain the evidence, and the reasons for the failure to complete discovery to date." *Alliance for Metro. Stability v. Metro. Council*, 671 N.W.2d 905, 919 (Minn. App. 2003). When the nonmoving party has been allowed only minimal discovery and the information that party needs to survive summary judgment is in the moving party's sole possession, summary judgment may be premature. *U.S. Bank Nat'l Ass'n v. Angeion Corp.*, 615 N.W.2d 425, 433-34 (Minn. App. 2000), *review denied* (Minn. Oct. 25, 2000). We review a district court's denial of a continuance for abuse of discretion. *Lewis v. St. Cloud State Univ.*, 693 N.W.2d 466, 473 (Minn. App. 2005), *review denied* (Minn. June 14, 2005). A district court does not abuse its discretion if the discovery sought would not change the result of the summary-judgment motion. *QBE Ins. Corp. v. Twin Homes of French Ridge Homeowners Ass'n*, 778 N.W.2d 393, 400 (Minn. App. 2010).

7

The Petersons did not submit an affidavit pursuant to rule 56.06. Failure to do so is by itself sufficient to deny their motion for a continuance. *Molde v. CitiMortgage, Inc.*, 781 N.W.2d 36, 45 (Minn. App. 2010). But even if they had properly submitted the affidavit, we discern no abuse of discretion.

First, the record supports the district court's determination that the Petersons were not diligent—they did not initiate any discovery between the filing of the complaint in October 2012 and the end of December 2012, when the bank moved for summary judgment. And at the March 11, 2013 hearing on the bank's summary-judgment motion, the Petersons acknowledged that they first served discovery within the preceding one to two weeks.

Second, we are not persuaded that the Petersons needed discovery about property appraisals and what the bank knew about the property's conformity with city codes. They agreed to go forward with the purchase without obtaining an appraisal, noting in the offer letter: "we agree to forgo the usual practice of outside appraisal/attorney and other normal convenience services of onsite buildings and make these inspections with the realtor ourselves as knowledgeable and experienced DIY'ers." Moreover, the information they sought was not solely in the bank's possession. The Petersons viewed the property before purchasing it, and could have contacted the city themselves to determine whether the condition of the property complied with city codes.[3]

---

[3] The Petersons argue for the first time on appeal that discovery would have revealed that the bank reported derogatory credit information against them and unlawfully took proceeds at closing. Because they are not properly before us, we will not consider these arguments. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

Finally, we reject the Petersons' assertion that the bank's various sanction motions prevented them from pursuing discovery. The Petersons waited almost five months to initiate discovery, including the two months after the bank served its summary-judgment motion. While the Petersons faced four sanction motions during this time period, we are not convinced that this reasonably prevented them from serving discovery requests. *See Liberty Mut. Ins. Co. v. Ne. Concrete Prods., LLC*, 756 N.W.2d 93, 105-06 (Minn. App. 2008) (holding party was not diligent in seeking discovery when it pursued virtually no discovery in the six months between the time the case commenced until the summary-judgment hearing). On this record, we conclude that the district court did not abuse its discretion by denying the Petersons' motion to continue the bank's summary-judgment motion.

## III.   The bank is entitled to summary judgment on its counterclaims.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, we review the record de novo, in a light most favorable to the nonmoving party. *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 364 (Minn. 2009).

A mortgage on real estate is designed "to pledge property as security for the payment of a debt." *City of St. Paul v. St. Anthony Flats Ltd. P'ship*, 517 N.W.2d 58, 61 (Minn. App. 1994), *review denied* (Minn. Aug. 24, 1994). If a mortgagor defaults, the mortgagee and holder of the promissory note may foreclose on the mortgage and sell the

9

property or sue for a personal judgment on the note. *Id.* at 61-62. A mortgagee may pursue both foreclosure and a personal judgment on the note, so long as the mortgagee does not obtain a double recovery. *JPMorgan Chase Bank, N.A. v. Erlandson*, 821 N.W.2d 600, 606 (Minn. App. 2012).

As relevant to this appeal, the bank asserted three counterclaims seeking to collect the unpaid balances on the down-payment note, the third note, and the fourth note. The notes provide that a default occurs when the borrower fails to make any payment when due, and that upon default, the bank may declare the entire principal balance and all accrued unpaid interest immediately due. The Petersons admit they signed the down-payment note and fourth note and that they stopped making payments. But they argue that summary judgment on the bank's counterclaim is inappropriate because there are issues of material fact regarding the purchase price, allocation of the proceeds of the down-payment note, and the validity of the third note. We address each argument in turn.

**Purchase price**

The Petersons argue that there are factual issues about the purchase price because there was no appraisal, they did not sign a purchase agreement, and they agreed to pay a lower price than the bank asserts. We disagree. As an initial matter, we observe that any claimed dispute as to the purchase price is not material to any of the bank's three counterclaims. The arguments about the purchase price relate to the amount of the first note; the bank did not bring a counterclaim on the first note. Moreover, the Petersons' claims fail on the merits. First, the Petersons chose to proceed without an appraisal and they do not cite any legal authority indicating that the lack of an appraisal creates a fact

10

issue as to the purchase price. *See* Minn. R. Civ. P. 56.05 (stating that a party opposing a motion for summary judgment may not rest on "mere averments or denials," but must present specific facts showing there is a genuine issue for trial). Second, the lack of a written purchase agreement does not, in and of itself, create a material fact issue regarding the purchase price. Third, the Petersons' bald assertion that the purchase price was $423,900 is inconsistent with all of the documentary evidence. Elizabeth Stewart-Peterson responded affirmatively to Hillman's written statement that the sale price would be "$443,900 + or – a little," and the Petersons later signed a Department of Housing and Urban Development (HUD) settlement statement listing the sale price as $443,900. The loan documents confirm this price. The first note secures a loan in the amount of $515,000. The Petersons signed an attached disbursement request and authorization that shows the title company would receive $423,900 of the proceeds at closing. The Petersons obtained a separate $20,050 loan to fund the down payment. These two notes together demonstrate that the purchase price was $443,900. The Petersons' conclusory assertion that the purchase price was $423,900, without any evidentiary support, is insufficient to defeat summary judgment.

We also reject the Petersons argument that Hillman's representation that the bank would apply their $20,050 down payment to the purchase price reduces the price to $423,900. This argument has no legal support because generally a down payment is considered part of the purchase price. *See NC Props., LLC v. Lind*, 797 N.W.2d 214, 218 (Minn. App. 2011) ("[A] down payment . . . is that part of the purchase price paid by the buyer initially to induce the seller to enter into the contract, thereby conveying equitable

11

title and surrendering possession of the land." (alterations in original) (quotation omitted)). The Petersons' argument also lacks evidentiary support. The Petersons provide no competent evidence that their down-payment note would reduce the purchase price other than their own unsupported denials of the bank's evidence. *See* Minn. R. Civ. P. 56.05 (stating that a party must present specific facts showing that there is a genuine issue for trial and may not rest on mere denials or averments).

**Allocation of the down payment**

The Petersons next argue that there are material fact issues as to the allocation of the down-payment loan. Specifically, they assert that their $20,050 down payment is listed on the bank's ledger balance report for the sale but not on the HUD statement, and that the bank committed fraud by not allocating the borrowed funds as listed in the ledger. We are not persuaded. The fraud assertion is based on the failed argument that the down payment reduces the purchase price. And discrepancies between the HUD statement and the bank's ledger are not material to the bank's counterclaims.[4] Because the Petersons do not dispute the amount of the down-payment note, admit they signed it, and acknowledge that they have not made any payments, the bank is entitled to judgment as a matter of law. *See St. Anthony Flats Ltd. P'ship*, 517 N.W.2d at 61-62.

---

[4] The Petersons also argue that issues of material fact exist regarding the amount of borrowed proceeds because the bank paid approximately $30,000 in closing costs, leaving approximately $67,000 instead of the $91,100 as promised for future advances. Because they did not make this argument in the district court, we do not consider it. *Thiele*, 425 N.W.2d at 582.

**Third note**

Finally, the Petersons argue that the third note is fraudulent and that there are factual issues about whether they knowingly entered into the loan associated with the note. At the summary-judgment hearing, the Petersons voluntarily dismissed their claim that the bank committed fraud in creating the note and forged the Petersons' signatures. Nonetheless, Bruce Peterson continued to assert that he did not sign the note, citing only his self-serving affidavit. This evidence is not sufficient to create an issue of material fact for trial. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) ("[T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions."). It is undisputed that the Petersons received and spent the funds secured by the note the same day they were deposited, and they have not made the required loan payments.[5] The Petersons deny that they knowingly entered into the loan. They allege that the bank procured their signatures on the note when they signed a different agreement by slipping the third note in with other documents to obtain the Petersons' signatures. By accepting the loan proceeds, the Petersons are estopped from later repudiating the transaction. *See Anderson v. First Nat'l Bank of Pine City*, 303 Minn. 408, 412, 228 N.W.2d 257, 260 (1975). Accordingly, the bank is entitled to judgment as a matter of law because there are no disputed factual

---

[5] The Petersons argue the bank should not be able to recover because it told them to continue construction instead of paying down their loans. This argument was not presented to the district court, so we do not consider it. *Thiele*, 425 N.W.2d at 582.

issues that the Petersons received the loan funds, benefitted from them, and did not make any payments on the note.

**IV.    The district court did not abuse its discretion by awarding sanctions.**

An attorney presenting pleadings or motion papers to the court certifies that the claims are supported by existing law, or a non-frivolous argument to change the law; and that the factual allegations have evidentiary support.  Minn. Stat. § 549.211, subd. 2; Minn. R. Civ. P. 11.02.  A district court may impose sanctions against "the attorneys, law firms, or parties" who violate these requirements.  Minn. Stat. § 549.211, subd. 3.  But a represented party cannot be sanctioned for violation of the certification that claims are based on existing law or a good-faith argument for the extension of the law.  Minn. Stat. § 549.211, subd. 5(b); Minn. R. Civ. P. 11.03(b)(1).  In determining whether sanctions are appropriate, the district court applies an objective standard, analyzing whether the party's conduct was reasonable under the circumstances.  *See In re Adoption of T.A.M.*, 791 N.W.2d 573, 579 (Minn. App. 2010).  We review a district court's award of sanctions for an abuse of discretion.  *Collins v. Waconia Dodge, Inc.*, 793 N.W.2d 142, 145 (Minn. App. 2011), *review denied* (Minn. Mar. 15, 2011).

If a party moves for sanctions, the motion "shall be served . . . but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . , the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."  Minn. R. Civ. P. 11.03(a)(1).  The 21-day-notice requirement has been strictly construed.  *See Johnson ex. rel. Johnson v. Johnson*, 726 N.W.2d 516,

519 (Minn. App. 2007) (reversing fees award because nonmovant was not given 21 days' notice and opportunity to withdraw submission).

The Petersons first argue that the district court abused its discretion by awarding $5,000 in sanctions against attorney Tarshish because the bank did not comply with the 21-day notice requirement. But they did not present this argument to the district court. In fact, the Petersons expressly stated that they did not dispute that the bank met the procedural requirements for seeking sanctions. Because the Petersons did not raise the notice argument in the district court, it is waived. *See Pratt Inv. Co. v. Kennedy*, 636 N.W.2d 844, 851 (Minn. App. 2001) (declining to consider new argument on appeal as basis for assertion that respondent should have been awarded rule 11 sanctions); *Empire Fire & Marine Ins. Co. v. Carlson*, 476 N.W.2d 666, 669 (Minn. App. 1991) (holding that because argument regarding attorney fees under rule 11 and Minn. Stat. § 549.21 was not presented in the district court, it was not properly before this court on appeal); *see also Thiele*, 425 N.W.2d at 582.

The Petersons next argue that the district court abused its discretion by awarding $28,782.53 in sanctions. They do not challenge the amount of the award, or assert that their status as represented parties during a portion of the case makes sanctions inappropriate.[6] Rather, they contend that the sanctions award reflects the district court's disagreement with their legal theories rather than a determination that their claims lacked factual and legal support. This argument is unavailing. The district court noted that the

---

[6] We note that the Petersons were unrepresented between November 16, 2012, and January 23, 2013, and filed a motion with the district court during that time.

15

Petersons continued to pursue their claims, despite clear indications in the order denying their motion for a temporary restraining order that the claims wholly lacked merit. And although a finding of bad faith is not required in order to award sanctions, *see Cargill Inc. v. Jorgenson Farms*, 719 N.W.2d 226, 234 (Minn. App. 2006), the district court found that the Petersons acted in bad faith. Our careful review of the record supports this conclusion. The Petersons continued to assert claims after their deficiencies were noted, changing their allegations in an attempt to avoid dismissal of their claims. For example, the verified complaint alleges that the Bank forged the third note. While the Petersons later admitted the term forgery was incorrect, they continued to deny responsibility on the note based on fraud. The undisputed record shows that the funds associated with the note were deposited in their account, that they withdrew the funds, and that they used the funds to buy a truck. On this record, we discern no abuse of discretion.

In sum, we dismiss the Petersons' challenge to the summary dismissal of their claims against the bank because their release of claims against Hillman also releases the bank. We conclude the district court did not abuse its discretion by denying the Petersons' motion to continue the summary-judgment hearing and the bank is entitled to summary judgment on its counterclaims. Finally, we discern no abuse of discretion in the sanctions award.

**Affirmed; motion granted.**