MARTIN R. SATHRE, TRUSTEE FOR THE HEIRS
OF FRANCIS L. KEENA, v. ROBERT B.
BREWER, JR., AND ANOTHER.
COLONIAL INSURANCE COMPANY OF
CALIFORNIA, THIRD-PARTY DEFENDANT.
GLENS FALLS INSURANCE COMPANY,
FOURTH-PARTY DEFENDANT.

184 N. W. (2d) 668.

March 5, 1971—No. 42299.

*Rufer, Hefte, Pemberton & Schulze* and *James L. Schulze,* for appellant.

*Quinlivan, Williams, Johnson & Quinlivan, Richard R. Quinlivan,* and *John E. Simonett,* for respondent third-party defendant.

Heard before Knutson, C. J., and Nelson, Otis, Peterson, and Kelly, JJ.

PETERSON, JUSTICE.

Livingston Lumber Company (hereafter lessee), insured by fourth-party defendant Glens Falls Insurance Company (hereafter Glens Falls), leased a truck from K. L. Luttschwager (hereafter lessor), insured by third-party defendant Colonial Insurance Company (hereafter Colonial). Defendant Robert B. Brewer, Jr., employed by lessee, was the driver of the truck when on December 15, 1966, it became involved in an accident resulting in the death of Francis L. Keena, a passenger.

The wrongful death action by plaintiff, Martin Sathre, as trustee for Keena's heirs, was settled by stipulation with the two insurers and paid by Glens Falls. The two insurers stipulated that the trial court should thereafter determine whether the policies of both insurers afforded concurrent coverage or, if not, which of them afforded primary coverage.

Lessee was engaged in the business of a saw mill and lumber yard. It used the leased truck exclusively in its business for long-haul transport of its products. The lease of the truck provided in part:

"* * * At all times throughout the term of this lease [Lessee] shall have complete and absolute possession and control of said equipment * * * as though it were the owner thereof [except for times of overhaul by Lessor] * * *; * * * said equipment shall be registered in the State of Montana with [Lessee] as the registered owner and Lessor as the legal owner; * * * the operation of said equipment shall be conducted under the absolute and exclusive supervision and control of [Lessee] * * *.

"* * * Lessor will paint said equipment in colors and design specified by [Lessee] and will paint LIVINGSTON LUMBER, INC. insignia or lettering thereon * * *.

* * * * *

"* * * [Lessee], at its expense, will obtain and keep in force throughout the term of this lease, insurance protecting both [Lessee] and Lessor against liability [resulting from operation of the truck during the term of the lease] * * *."

Glens Falls wrote a comprehensive general automobile liability policy for the lessee's business. Insuring Agreement III of the policy provided coverage to—

"* * * any person while using an owned automobile or *a hired automobile* and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission." (Italics supplied.)

Glens Falls did not wish to cover long-haul trucking, and lessee did not report the truck to Glens Falls as a hired vehicle. However, as the trial court found on the basis of preaccident and post-accident written communications between Glens Falls and its agent, Glens Falls was aware that its insured did engage in long-haul trucking.

The condition of the Glens Falls policy upon which it relies for avoiding primary coverage provides:

*"Other Insurance:* * * * provided, however, the insurance under this policy, with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance." [1]

Lessor, as declared in its policy with Colonial, is engaged in the business of "truckmen-commercial." Although the subject truck was listed as insured, Colonial did not understand that it was insuring a truck rental business. Neither the lessee nor its employee was a named insured in that policy. Insuring Agreement III(a) of the Colonial policy provided:

*"Definition of Insured:* (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured * * * and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. The insurance with respect to any person or organization other than the named insured * * * including but not limited to any person or organization engaged in selling, repairing, servicing, washing, delivering, testing, parking or storing automobile, does not apply:

"(1)  If there is any other valid and collectible insurance applicable to the same loss covering such person as a named insured

---

[1] Condition (6) of the Glens Falls policy, evincing a relationship between the premium paid and the contemplated coverage, provides in part: "* * * The rates for each $100 of 'cost of hire' shall be 5% of the applicable hired automobile rates, provided the owner of such hired automobile has purchased automobile Bodily Injury Liability and Property Damage Liability insurance covering the interest of the named insured on a direct primary basis as respects such automobile and submits evidence of such insurance to the named insured."

or as an agent or employee of a named insured under a policy with limits at least equal to the financial responsibility requirements specified by the financial responsibility law of the state in which the insured automobile is principally garaged; and in such event, the two or more policies shall not be construed as providing cumulative or concurrent coverage and only that policy which covers the liability of such person as a named insured, or as an agent or employee of a named insured, shall apply. In the event there is no such other valid and collectible insurance, the coverage afforded to a person other than the named insured, his agent or employee, is limited to the financial responsibility requirements specified by the financial responsibility law of the state in which the insured automobile is principally garaged."

Condition 20 of the Colonial policy provided:

"*Other Insurance* * * *: If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, under coverages A and B the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance."

The trial court found and concluded from all the insurable circumstances that Glens Falls' policy provided primary coverage of the leased truck and that it accordingly was not entitled to recover from Colonial any of the sums it had paid in the defense and settlement of plaintiff's claim. We affirm the judgment entered pursuant to these findings and conclusions.

There is no talismanic rule for resolving this perennial problem of determining coverage of policies applicable to the same insured, vehicle, or loss situation. Until the insurance industry establishes a more practicable method for determining these

issues, courts must labor to achieve an equitable result in individual situations. As this court said in Federal Ins. Co v. Prestemon, 278 Minn. 218, 228, 153 N. W. (2d) 429, 435:

"* * * In the absence of an accepted lexicon of insurance words and phrases, one insurance company cannot anticipate that all other insurance companies will intend that a given word or phrase should mean practically the same thing always and under precisely the same circumstances. It should be assumed that insurance policies, and particularly policies issued to a business organization, are drawn to fit the particular needs of the insured. Every policy must therefore be treated as an individual contract, the language of which can only be understood in reference to the insured's insurable circumstances."

In Woodrich Const. Co. v. Indemnity Ins. Co. 252 Minn. 86, 98, 89 N. W. (2d) 412, 420, we rejected any "arbitrary rule or circumstance" for determining respective liabilities in the situation of overlapping insurance coverage, and this was reiterated in Olson v. The Hertz Corp. 270 Minn. 223, 227, 133 N. W. (2d) 519, 523.

Criteria for determining respective responsibility of insurers, as stated in Olson and restated in Prestemon (278 Minn. 229, 153 N. W. [2d] 436), include these questions:

"* * * (1) Which company by its policy intended to cover 'business operations'? (2) Which company specifically described the accident-involved vehicle in its policy? (3) Which premium is reflective of the greater contemplated exposure? (4) Which company insured the particular risk as an 'incident' of its object, and which policy appears to cover the particular car and the risks inherent in using the car for contemplated 'business operations' uses?"

We hold that, measured by these criteria and the totality of the insuring circumstances, the trial court reached a sustainable result.

A most important insurable circumstance is that the accident-involved truck was a permanently hired vehicle, and Glens Falls' policy was intended to cover hired vehicles. The lease, too, is a significant insurable circumstance even though Glens Falls was not privy to it. The use to which the truck was being put at the time of the accident was an integral part of the lessee's business but only incidental to the lessor's business. Colonial, insurer for the lessor, did not understand that it was insuring a trucking-equipment rental business, but Glens Falls knew that its insured, the lessee, engaged in long-haul trucking as part of its business. The lessee, who controlled the vehicle, was a known quantity to Glens Falls and not to Colonial. Glens Falls' policy did not expressly describe the hired vehicle, but it did agree to cover any vehicles that its insured might hire. Although Glens Falls may not have received all the premium it should have collected for its exposure,[2] this factor alone is not decisive of insuring intent, as was made clear in Prestemon.

Federal Ins. Co. v. Prestemon, *supra,* and Dukeman v. Hardware Mutual Ins. Co. 286 Minn. 118, 174 N. W. (2d) 237, do not compel a contrary result. Without detailing differences in policy language or other insurable circumstances, we think that the situations there are distinguishable from the one presented here. With respect to the fact that in both Prestemon and Dukeman the accident-involved vehicle was a temporary loaner regularly provided for the convenience of customers, Judge James E. Preece aptly stated the important difference:

---

[2] By Condition (6) of its policy, footnote 1, *supra,* Glens Falls in effect agreed to charge its insured, lessee, only 5% of its applicable hired automobile rate if lessor, owner of the hired vehicle, purchased insurance covering lessee on a direct primary basis and so advised lessee; and, absent such agreement, Glens Falls was to charge 100% of its hired automobile rate. The decision was left to its insured lessee, which, by its lease, decided upon the latter. The trial court concluded that this condition was "inconsistent with [Glens Falls'] claim that its hired automobile coverage is to be deemed excess."

"The court is persuaded there is a difference between coverage afforded by a company to its named insured for a temporary substitute or a non-owned automobile; these are casual risks which a company assumes and the primary risk perhaps may belong elsewhere. On the other hand, coverage afforded a hired automobile, a vehicle which the named insured uses in his business the same as if it were his own vehicle, would seem to be the assumption of something more than an 'incidental' risk, so that the primary responsibility for a loss would properly be [allocated] to the company affording hired automobile coverage."

We are not unmindful that in Dukeman a policy was deemed primary where it specifically named the insured vehicle and that in Prestemon we alluded to a "general rule" that, where one policy contains an excess clause and the other contains a no-liability clause, liability is imposed upon the latter for the reason that excess insurance does not provide other valid and collectible insurance. We simply reiterate that these are general propositions to be given substantial consideration along with other factors in the totality of insurable circumstances.

Affirmed.