Emmett GARRICK, et al., Respondents,

v.

NORTHLAND INSURANCE CO.,
Petitioner, Appellant,

Athena Assurance Company,
Respondent,

The Omaha Indemnity Co.,
Petitioner, Respondent.

No. C0–90–100.

Supreme Court of Minnesota.

May 31, 1991.

Louis A. Dovre, David M. Bolt, Rider, Bennett, Egan & Arundel, Minneapolis, for appellant.

Charles B. Bateman, Halverson, Watters, Bye, Downs, Reyelts & Bateman, Ltd., Duluth, for Athena.

Dexter O. Corliss, Clarance Hagglund, Hagglund Law Firm, Minneapolis, for Omaha.

Robert C. Falsani, Falsani, Balmer, Berglund & Merritt, Duluth, for Garrick.

YETKA, Justice.

This case involves the priority of three policies of insurance providing the insured with uninsured motorists coverage. We reverse in part the holdings of the court of appeals and reinstate in part the holdings and findings of the trial court.

An outline of the facts in this case is required for a proper disposition. Respondents, Emmett and Kathleen Garrick, commenced a declaratory judgment action to recover, among other things, uninsured motorist benefits from three insurance carriers—respondent, Athena Assurance Company (Athena); appellant/petitioner, Northland Insurance Company (Northland); and respondent/petitioner, Omaha Indemnity Company (Omaha)—by reason of injuries sustained by Emmett Garrick when his semitruck and trailer struck an uninsured motorist. The trial court found coverage by all three insurers in the following order: the first $50,000 of coverage from Northland under its coverage for the trailer involved in the accident; the second $50,000 from Athena under its coverage of the tractor involved in the accident; the remaining $200,000 of coverage from Northland based on its coverage of the tractor and other vehicles; and, finally, from Omaha for its coverage of the Garricks' automobiles. The trial court denied the Garricks' claim for attorney fees.

The court of appeals reversed the trial court's order of priority and held that Omaha had primary, Athena secondary, and Northland tertiary coverage. The court also reversed and allowed the Garricks attorney fees as to Northland. Finally, the court of appeals upheld the multiplication of Northland's uninsured motorist coverage. *Garrick v. Northland Ins. Co.,* 460 N.W.2d 920 (Minn.App.1990). All three insurance companies appealed. However, this court granted review only to Northland and Omaha; Athena's petition was denied.

The accident at issue occurred on October 17, 1984, when a semitruck owned and operated by Emmett Garrick struck an uninsured motorist. The truck was a 1958 Hendrickson tractor and was hauling an empty trailer from St. Cloud to Duluth. Garrick swerved to miss a stalled car, but the rear of the trailer struck it. Garrick claims injuries from the accident.

At the time of the accident, Garrick owned the Hendrickson tractor. He bought it from Donald Youngdahl, d/b/a D & D Transport, for whom Garrick had previously done some driving. At the trial, only Garrick testified. The depositions of Donald Youngdahl and his insurance agent, Duane Wolff, were admitted into evidence. According to Youngdahl's deposition testimony, he sold Garrick the Hendrickson tractor so Garrick could begin working as a truck driver.

After the sale of the truck, Garrick and Youngdahl entered into a lease agreement. Such lease agreements are common in the trucking industry. Generally, the driver/owner will lease his/her tractor to the motor carrier so the driver/owner can operate under the motor carrier's "operating authority." This operating authority must be obtained from both the Interstate Commerce Commission and the Minnesota Department of Public Services when hauling nonexempt commodities.

The lease agreement executed by Garrick and Youngdahl in this case is not very helpful. It appears that their names under the titles "lessee" and "lessor" have been transposed. The agreement also states

that the lessee (which was Youngdahl according to the agreement) will obtain insurance on the tractor. In contrast, deposition testimony indicates that Garrick and Youngdahl intended Garrick to obtain the insurance coverage for the Hendrickson tractor. Furthermore, as Youngdahl stated regarding the lease agreement, "We just wrote it up so he'd [Garrick] have an agreement in the truck. We didn't really go by it." The parties seem to agree that the language of the lease is not important for a determination of this case.

At the time of the accident, the Hendrickson tractor was covered under Youngdahl's Northland insurance policy. The Hendrickson tractor was also listed on Garrick's Athena policy obtained through Youngdahl's insurance agent, Duane Wolff. Garrick testified that, at the time he obtained insurance coverage for the Hendrickson tractor, he told Duane Wolff that the tractor no longer needed to be covered by Youngdahl. Wolff did not remove the Hendrickson from coverage, nor did Youngdahl direct him to do so.

The Athena and Northland policies contain nearly identical "other insurance" provisions. Both "other insurance" provisions are primary/excess-type clauses, providing primary coverage for any covered auto owned by the insured and excess coverage for any covered auto hired or borrowed by another from the insured.

At the time of the accident, the Garricks had a policy issued by Omaha on their two private autos. The Omaha policy originally contained an "other insurance" clauses providing for pro rata coverage. However, this "other insurance" provision was deleted by an Omaha endorsement. No substitute provision was provided in its place.

The issues on this appeal are:

I.    Does the absence of an "other insurance" clause leave Omaha as the primary uninsured motorist carrier?

II.    Does the language of the Northland policy allow for the multiplication of coverages?

III.    Are the Garricks entitled to attorney fees and costs incurred in bringing the declaratory judgment action to establish coverage?

■   Interpretation of an insurance policy is a question of law. A reviewing court is not bound by the lower court's determination. *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978). Thus, this court may examine de novo the language and insuring intent of the policies at issue here.

The court of appeals held that Omaha provides primary uninsured motorists coverage, Athena secondary, and Northland tertiary.[1] *Garrick*, 460 N.W.2d at 925. The court of appeals found that apportionment could be made without violating any terms of the various policies. It reasoned that, since Omaha deleted its "other insurance" provision, it became the primary insurer. As between Athena and Northland, their policies contain functionally equivalent "other insurance" provisions. According to the court of appeals, the Athena policy provides secondary coverage on the Hendrickson tractor (the covered auto its insured, Garrick, owns), and the Northland policy provides tertiary (or excess) coverage on the Hendrickson tractor (the covered auto its insured, Youngdahl, did not own, but leased from Garrick). *Id.*

Omaha contends that the court of appeals erred by relying on the absence of the "other insurance" clause without reviewing the total policy insuring intent of the three policies at issue.

As a general rule, "an insurance policy is a contract and the rights of the contracting parties are determined by the terms of the policy." *Farkas v. Hartford Accident and Indem. Co.*, 285 Minn. 324, 327, 173 N.W.2d 21, 24 (1969). Regarding "other insurance" clauses, this court, in *Integrity Mutual Insurance Co. v. State Automo-*

---

**1.** The court of appeals found the trailer involved in the accident not to be covered under Youngdahl's uninsured motorist coverage. The Garricks and Athena argue before this court that the trailer was covered. However, the Garricks did not appeal that decision, and Athena's petition for review was denied by this court.

*bile & Casualty Underwriters Insurance Co.,* 307 Minn. 173, 239 N.W.2d 445 (1976), stated the following:

> When it is clear that two or more companies are among themselves liable to the insured for his loss but the apportionment among the companies cannot be made without violating the other insurance clause of at least one company, then the courts must look outside the policies for rules of apportionment.

*Id.* at 174–75, 239 N.W.2d at 446.

Here, however, there is no Omaha "other insurance" provision to conflict with the Athena and Northland provisions. Nevertheless, Omaha argues that this court should not turn the absence of an "other insurance" clause into a "void" insulating Athena and Northland from the risk their commercial policies were designed to cover. Omaha looks to the following language to support its argument:

> In Minnesota, this court does not simply look at the type of "other insurance" clauses involved. In [*Integrity*], this court explained that the better approach was to "allocate respective policy coverages in light of the total policy insuring intent * * *."
>
> \*     \*     \*     \*     \*     \*
>
> It appears to us that, in this case, rather than applying the three-part "closest-to-the-risk" test, it is more helpful to use the broader approach set out in *Integrity* of allocating respective policy coverages in light of the total policy insuring intent, as determined by the primary policy risks and the primary function of each policy.

*Interstate Fire & Casualty Co. v. Auto–Owners Ins. Co.,* 433 N.W.2d 82, 85–86 (Minn.1988) (citing *Integrity,* 307 Minn. at 175, 239 N.W.2d at 446). Omaha contends that, since the Northland and Athena policies are designed for commercial transportation risks and since the Omaha policy is designed to deal with automobile risks, the total insuring intent and primary functions of the policies do not point to Omaha as the primary insurer. We agree.

Omaha could have made a decision in this case much simpler by leaving in the "other insurance" clause. However, its absence does not, in our judgment, make mandatory a finding that Omaha is the primary carrier.

█ In allocating the respective policy coverages, we do so in light of the total policy insuring intent of the three policies at issue as determined by the primary policy risks and the primary function of each policy. Therefore, it is apparent that the priority of the policies is as follows: Athena is the primary insurer because Garrick is the named insured on the policy covering the tractor, which he was using at the time of the accident. Northland is liable on a secondary basis because the primary risks and function of that policy, when issued, was to insure the Hendrickson when the named insurer, Youngdahl, owned or leased it. Finally, Omaha would be liable on a tertiary basis because the primary function of its policy was to insure Garrick's passenger automobiles, not the vehicle involved in the accident.

As a threshold matter, Northland maintains that this case involves the stacking of policies. As we stated in *Rusthoven v. Commercial Standard Insurance Co.,* 387 N.W.2d 642 (Minn.1986), in situations where, as here, "the policy itself sets the limit of the insurer's liability as the sum of the limits applicable to each covered vehicle, there is no necessity to resort to the stacking principle. The limit is fixed by the policy language, not in derogation of it." *Id.* at 644 n. 1. Therefore, we find no merit in Northland's stacking argument.

█ Northland next claims that its policy contains inconsistent language specifically limiting, on the one hand, uninsured motorists coverage to $50,000 *per accident* while specifically providing, on the other hand, uninsured motorists coverage of the sum of the limits of all applicable covered autos. The endorsement at issue, CA 21 24, reads as follows:

CHANGES IN UNINSURED
MOTORISTS INSURANCE

(MINNESOTA)

\*     \*     \*     \*     \*     \*

C. Paragraph 1. of OUR LIMIT OF LI-ABILITY is changed to read:

1. Regardless of the number of **insureds,** claims made or vehicles involved in the **accident,** the most **we** will pay for all damages resulting from any one **accident** is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations. If there is more than one covered **auto our** limit of liability for any one **accident** is the sum of the limits applicable to each covered **auto.**

The declaration states that the limit of liability for "UNINSURED MOTORISTS" is "$50,000 each accident." The declaration also references, under the heading "Schedule of Covered Autos You Own," Schedule T–001, which lists the additional tractors and semitrailers covered. This inconsistency creates an ambiguity, Northland argues, and, therefore, requires an analysis of the reasonable expectations of the parties.

In *Rusthoven, supra,* this court analyzed similar uninsured motorists provisions. The policy at issue there contained CA 21 24 cited above and an additional endorsement, CA 21 07, which, among other things, limited liability to $25,000 per accident. We found the endorsements there "irreconcilably inconsistent" and, therefore, ambiguous. Citing fundamental principles of contract law (and their application to insurance law), this court held that the ambiguity should be interpreted against the insurer. *Id.* at 645 (citing *Hammer v. Malkerson Motors, Inc.,* 269 Minn. 563, 571, 132 N.W.2d 174, 179 (1964) ("One well-established rule which we follow is that where the language used in an insurance policy, which is chosen by the insurance company, is ambiguous or susceptible of two meanings, it must be given that meaning which is favorable to the insured.")). The court warned, however, that such interpretation should not go beyond the reasonable expectations of the insured. 387 N.W.2d at 645 (citing *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* 366 N.W.2d 271, 277 (Minn.1985)). We concluded in *Rusthoven* that the $25,000 limit stated in the policy should be multiplied by the number of covered vehicles (67) for a total of $1,675,000.

We find the Northland policy language distinguishable from the endorsements in *Rusthoven.* Here, the policy provisions are neither irreconcilable nor ambiguous. The first sentence of CA 21 24 states that, in any one accident, the most the insurer will pay for uninsured motorists coverage is the limit shown in the declaration. However, the second sentence of CA 21 24 can be read to *modify* the first sentence where, as here, there is more than one covered auto; the uninsured motorists coverage then is the sum of the limits applicable to each covered auto. We find, therefore, that the policy limit of Northland's uninsured motorists provision can be multiplied and affirm the court of appeals' holding as to that issue.

■ The Garricks sought, and the court of appeals granted, attorney fees from Northland. The court of appeals based its award of attorney fees on Minn.Stat. § 555.08 (1990), which states: "[R]elief based on a declaratory judgment or decree may be granted whenever necessary or proper."

Whether section 555.08 can be used to award attorney fees in a declaratory judgment action involving insurance coverage is an issue of first impression for this court. Attorney fees are generally not recoverable unless there is either contractual or statutory authority to do so. *Morrison v. Swenson,* 274 Minn. 127, 137–38, 142 N.W.2d 640, 647 (1966). In *Morrison,* this court held that an insured may recover legal fees incurred in a declaratory judgment action brought to determine if the insurer was required to defend the insured against a third-party personal injury action. *Id.* at 138, 142 N.W.2d at 647. We allowed recovery based on a breach of the insurer's contractual duty to defend. This court has not applied this rule to the case where the claim did not involve a liability of the insured to a third party. *Olsen v. Preferred Risk Mut. Ins. Co.,* 284 Minn. 498, 170 N.W.2d 581 (1969) (fees denied in declaratory judgment action for collision coverage under automobile policy); *Abbey v. Farm-*

*ers Ins. Exch.*, 281 Minn. 113, 160 N.W.2d 709 (1968) (fees denied in suit to establish right to disability benefits).

While there is great equity in plaintiffs' request for attorney fees, we decline to extend the award to cover attorney fees beyond the typical *Morrison*-type exception, *i.e.*, fees incurred as a direct loss incident to the breach of a contractual duty to defend. For over 100 years, the law in Minnesota has been that, absent a contractual agreement or statute, a party cannot collect attorney fees. *See Frost v. Jordon*, 37 Minn. 544, 546, 36 N.W. 713, 714 (1887) ("it is against the analogies of the law to allow expenses of litigation beyond the costs allowed by statute, which, as said before, however inadequate, are the measure of indemnity which the law provides"). The statute cited by plaintiffs in this case, Minn.Stat. § 555.08, simply cannot be extended to provide for attorney fees in a case such as this.[2] If the change in Minnesota's historical doctrine is to be made, it seems to us that this argument ought to be directed to the legislature.

The court of appeals is thus reversed, and the original judgment of the trial court is affirmed with the exception that Athena shall be first in priority, Northland second, and Omaha should be a tertiary carrier only.

---

**2.** To the extent that the court of appeals' decision in *Wondra v. American Family Insurance Group*, 432 N.W.2d 455, 460–61 (Minn.App. 1988), is contrary to our decision here as to attorney fees, that holding is overruled.