**Debra L. RICHARDSON, Respondent,**

v.

**Richard Byron LUDWIG, et al., Respondents,**

**Domino's Pizza, Inc., a Michigan corporation, Defendant,**

**Jermike Corporation, Appellant.**
**No. C9–92–1430.**

Court of Appeals of Minnesota.

Feb. 16, 1993.

Review Denied April 20, 1993.

Jeff M. Zalasky, Erstad & Riemer, P.A., Minneapolis, for appellant.

William R. Sieben, Schwebel, Goetz & Sieben, for Debra L. Richardson.

Emilio R. Giuliani, La Bore & Giuliani, Ltd., Hopkins, for Richard Byron Ludwig, et al.

Considered and decided by AMUNDSON, P.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

In this indemnity action, United States Fire Insurance Company, which issued a business automobile policy to a pizza franchise, contends the trial court erred in finding coverage under the policy for a claim brought against the business as a result of a delivery driver's negligence. In the event coverage is found, U.S. Fire claims its policy is secondary to a personal auto policy issued by State Farm Mutual Automobile Insurance Company on which the driver is insured. We reverse.

## FACTS

Appellant Jermike Corporation, a Domino's Pizza franchisee, operated two pizza delivery franchises. Jermike employed approximately 30 drivers, who delivered about 10,000 pizzas per month. Jermike required its drivers to have liability coverage on their delivery vehicles.

Respondent Debra L. Richardson commenced a negligence action as a result of injuries sustained in an October 21, 1988 automobile accident. Richardson's automobile was rear-ended by an automobile driven by respondent Richard Byron Ludwig and owned by respondent Elizabeth Couture, Ludwig's stepmother. At the time of the accident, Ludwig was returning from delivering a pizza for Jermike.

The vehicle Ludwig used for making pizza deliveries was owned by Couture and insured by State Farm, which provided liability coverage through a personal automobile policy. As a permissive user of Couture's vehicle and as a resident relative of the named insured, Ludwig was insured under the State Farm policy.

Jermike was insured under a business automobile policy issued by U.S. Fire. Under the U.S. Fire policy, liability coverage was afforded only for hired autos or non-owned autos. Non-owned autos were defined as:

Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

Richardson sued Ludwig, Couture, Jermike, and Domino's Pizza. Ludwig and Couture cross-claimed against Jermike and Domino's; Jermike and Domino's cross-claimed against Ludwig and Couture.

U.S. Fire, through its insured, Jermike, moved for summary judgment, claiming Ludwig was not an insured under its policy and, even if he were, the State Farm policy was primary. State Farm, through its insureds, Ludwig and Couture, brought a cross motion for summary judgment, asserting the U.S. Fire policy was primary. The trial court denied U.S. Fire's motion and granted State Farm's motion, finding the U.S. Fire policy to be primary.

Subsequently, U.S. Fire settled Richardson's claims. The settlement agreement reserves U.S. Fire's right to seek indemnity from State Farm. After settling, U.S. Fire moved for reconsideration of the trial court's prior order. In the event the trial court denied reconsideration, U.S. Fire re-

quested that the trial court amend its order to include the language of Minn.R.Civ.P. 54.02 to allow an appeal. The trial court denied the motion for reconsideration, but did amend its order to include the language of Minn.R.Civ.P. 54.02. Jermike appeals.

## ISSUES

1. Is this appeal properly before this court?

2. Did the trial court err in holding the U.S. Fire policy provides coverage to Ludwig and Couture?

3. Did the trial court err in holding the U.S. Fire policy primary?

## ANALYSIS

■ Summary judgment is appropriate when there is no genuine issue as to any material facts and a party is entitled to a judgment as a matter of law. Minn. R.Civ.P. 56.03. The essential facts in this case are undisputed, and the trial court's decision was based on its interpretation of the insurance policies at issue. This presents a question of law which this court reviews de novo. *See Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 887 (Minn. 1978). Similarly, this court reviews de novo the trial court's analysis of the policy insuring intent and its determination that the U.S. Fire policy is primary. *Garrick v. Northland Ins. Co.,* 469 N.W.2d 709, 711 (Minn.1991).

### 1. *Jurisdictional Challenges*

State Farm asserts three reasons that it believes this appeal is improper. First, State Farm asserts U.S. Fire is not the real party in interest; second, State Farm asserts the attorney representing U.S. Fire has a conflict of interest; and, finally, State Farm claims the appeal is untimely.

### A. *Real Party in Interest*

■ State Farm asserts, for the first time on appeal, that U.S. Fire is not the real party in interest and cannot prosecute this appeal. In moving for summary judgment, State Farm asked the trial court to determine which insurer was primary for

liability coverage. Although neither insurer was a party to the underlying litigation, they could stipulate that the priority issue would be resolved by the trial court in that litigation. *See Olson v. Hertz Corp.,* 270 Minn. 223, 133 N.W.2d 519 (1965). There is no explicit stipulation between U.S. Fire and State Farm permitting the trial court to resolve the priority issue; however, we conclude State Farm litigated the issue by consent. *See Roberge v. Cambridge Coop. Creamery Co.,* 243 Minn. 230, 234, 67 N.W.2d 400, 403 (1954). Having asked the trial court to decide the priority issue, State Farm cannot now claim the question is not properly before this court. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988).

### B. *Conflict of Interest*

■ State Farm next asserts that the attorney for U.S. Fire has a conflict of interest because he represented Ludwig and Couture at the trial level. State Farm takes the position that U.S. Fire's claim that State Farm must indemnify U.S. Fire is somehow adverse to the interest of Ludwig and Couture. Ludwig and Couture's liability, however, has been released by settlement. Regardless of the outcome of the coverage dispute, Ludwig and Couture no longer have an interest in this case.

### C. *Timeliness*

■ The trial court's initial order determining priority did not adjudicate all the claims of all the parties, and the judgment entered pursuant to that order was a non-appealable partial judgment. *See Olmscheid v. Minneapolis Northfield & S. Ry.,* 425 N.W.2d 312, 313 (Minn.App.1988). Because judgment was not entered on the settlement, the priority judgment remained a partial judgment. The time to appeal a partial judgment does not begin to run until entry of a final judgment adjudicating all the claims, rights and liabilities of the remaining parties. Minn.R.Civ.App.P. 104.-01.

■ Following the settlement, the trial court made the express determination of Minn.R.Civ.P. 54.02 to allow an immediate appeal of an otherwise nonappealable par-

tial judgment, and this appeal was timely filed within 90 days after entry of that judgment.

### 2. U.S. Fire's Insured

■ The U.S. Fire policy defines "insured" as:

a. You for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

\* \* \* \* \* \*

(2) Your employee if the covered "auto" is owned by that employee or a member of his or her household.

\* \* \* \* \* \* .

c. Anyone else who is not otherwise excluded under paragraph b. above and is liable for the conduct of an "insured" but only to the extent of that liability.

U.S. Fire contends Ludwig is excluded from coverage under paragraph b(2) because Ludwig, an employee, was driving a vehicle owned by a member of his household.

Before paragraph b(2) is applicable, the employee must be driving with the insured's permission a covered auto the insured owns, hires or borrows. The insured, Jermike, did not own the vehicle Ludwig was driving; Couture did.

This leaves the question whether Jermike hired or borrowed Couture's vehicle. Generally, "hire" implies that a price, reward or compensation will be paid for the use of a thing. *Insurance Co. of N. Am. v. Crippen*, 223 S.W.2d 297, 301 (Tex.Civ.App. 1949). There is no indication that Jermike paid anything for the use of Couture's vehicle.

The word "borrow" means:

To solicit and receive from another any article of property, money or thing of value with the intention and promise to repay or return it or its equivalent. \* \* \* The term may be used to express the idea of receiving something from another for one's own use.

*Black's Law Dictionary* 167 (5th Ed.1979). Jermike did not borrow the vehicle from Couture. Only Ludwig borrowed Couture's vehicle.

Although the exception on which U.S. Fire relies does not exclude Ludwig as an insured, Ludwig does not come within any of the three definitions of "insured" in the U.S. Fire policy. The first definition of "insured" is Jermike for any covered auto. This definition clearly does not include Ludwig. The second definition of "insured" is:

Anyone else while using with your [Jermike's] permission a covered "auto" you [Jermike] own, hire or borrow \* \* \*.

Ludwig was not using a covered auto Jermike owned, hired or borrowed. The final definition of "insured" is:

Anyone else who is not otherwise excluded under paragraph b. above and is liable for the conduct of an "insured" but only to the extent of that liability.

Ludwig is not excluded under paragraph b; he simply is not included in that paragraph's definition of "insured."

In any event, Ludwig does not come within the definition of "insured" in paragraph c. Ludwig was not responsible for the conduct of an insured as required by paragraph c. Ludwig is not an insured under any definition in the U.S. Fire policy. We conclude the trial court erred in finding the U.S. Fire policy applicable.

### 3. Primary Liability

■ The Minnesota Supreme Court has stated, with respect to situations in which two or more insurance companies may be liable for the same loss:

Often two or more companies would be fully liable for a loss but for their respective other insurance clauses, and many times those clauses conflict in their provisions. When it is clear that two or more companies are among themselves liable to the insured for his loss but the apportionment among the companies cannot be made without violating the other insurance clause of at least one company, then the courts must look outside the policies for rules of apportionment. One approach, known as the *Lamb–Weston* doctrine, is to require, when "other insurance" clauses conflict, that the loss be

prorated among the insurers on the basis of their respective limits of liability. *Lamb–Weston, Inc. v. Oregon Auto. Ins. Co.* 219 Or. 110, 341 P.2d 110 (1959).

The approach of the Minnesota court has traditionally been more complex than the *Lamb–Weston* doctrine. In *Federal Ins. Co. v. Prestemon*, 278 Minn. 218, 231, 153 N.W.2d 429, 437 (1967), we stated that the better approach is to allocate respective policy coverages in light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy. * * *

The nub of the Minnesota doctrine is that coverages of a given risk shall be "stacked" for payment in the order of their closeness to the risk. That is, the insurer whose coverage was effected for the primary purpose of insuring that risk will be liable first for payment, and the insurer whose coverage of the risk was the most incidental to the basic purpose of its insuring intent will be liable last.

*Integrity Mut. Ins. Co. v. State Auto. & Casualty Underwriters Ins. Co.*, 307 Minn. 173, 174–76, 239 N.W.2d 445, 446–47 (1976).

In *Prestemon,* the supreme court noted certain criteria for determining the primary and secondary liability of insurers of the same risk. Among the criteria noted were which policy was intended to cover the activity out of which the accident arose; which company specifically described the involved automobile in its policy; which company charged a premium reflecting a greater contemplated exposure; and which company apparently issued a policy designed to cover the particular car and the risks inherent in using that particular car. *Prestemon,* 278 Minn. at 229–30, 153 N.W.2d at 436–37, *cited in Auto Owners Ins. Co. v. Northstar Mut. Ins. Co.,* 281 N.W.2d 700, 704 (Minn.1979).

Until 1988, the law in Minnesota was that, when two insurers insured against the same risk, the priority of applicability of coverage was to be determined by examining the total policy insuring intent of the policies; this intent was to be determined by using three or four nonexclusive criteria. It was essentially a balancing test, in which the court was to consider all of the circumstances surrounding the policies.

In 1988, indications began to appear that this singular test was, in fact, two separate tests. *See Interstate Fire & Casualty Co. v. Auto–Owners Ins. Co.,* 433 N.W.2d 82, 86 (Minn.1988). In that case, the dispute was whether a homeowner's policy covering a student or an umbrella liability policy issued to a school district was primarily liable for injuries inflicted on another student occurring on school property. In determining that the umbrella policy issued to the school district was primarily liable, the Minnesota Supreme Court stated:

It appears to us that, in this case, rather than applying the three-part "closest-to-the-risk" test, it is more helpful to use the broader approach set out in *Integrity* of allocating respective policy coverages in light of the total policy insuring intent, as determined by the primary policy risks and the primary function of each policy.

*Id.* Subsequently, the Minnesota Supreme Court apparently reaffirmed the existence of two separate tests, the "broader" test of *Integrity Mutual* and the three-part test of *Auto Owners. Garrick v. Northland Ins. Co.,* 469 N.W.2d 709, 712 (Minn.1991).

This court has stated that the "broader" analysis of *Interstate Fire* and *Garrick* applies when the policies were intended to cover risks differing in kind and in size. *Illinois Farmers Ins. Co. v. Depositors Ins. Co.,* 480 N.W.2d 657, 661 (Minn.App. 1992). The analysis of *Garrick* and *Interstate Fire,* however, is "broader" only in the sense that it involves more than a mechanical application of the three factors set out in *Auto Owners.* The earlier cases, particularly *Integrity Mutual* and *Prestemon,* indicate that an analysis of all relevant factors must be made in every case involving overlapping coverage of the same risk.

U.S. Fire contends the other insurance clauses of the two policies can be reconciled and these clauses determine which policy is primary. The Minnesota Supreme Court has stated, however, that the language of

the other insurance clauses—or even the existence of such a clause—is not dispositive. *Garrick*, 469 N.W.2d at 712. In addition, where, as in this case, one policy contains an excess clause and the other policy contains a pro rata clause, the clauses conflict. *Integrity*, 307 Minn. at 176–77, 239 N.W.2d at 447.

### Specific Description

State Farm's policy covered the specific vehicle involved. State Farm agrees that its policy was intended to cover Couture and permissive drivers, including Ludwig, while using the car for business or pleasure. The U.S. Fire policy's declarations page does not specifically describe any vehicle; instead, it states that it covers non-owned autos.

### Premium

Jermike paid a $46 annual premium for its business auto coverage. The premium paid for the State Farm policy is not in the record. The U.S. Fire policy provided only liability coverage; the State Farm policy also provided all the coverages required by the No–Fault Act.

### Primary/Incidental Coverage

The State Farm policy was intended to cover Couture, Couture's vehicle, and permissive drivers of that vehicle. The U.S. Fire policy, on the other hand, provided liability coverage to Jermike for its vicarious liability arising out of automobiles it did not own. The State Farm policy provided coverage for business or pleasure use; the U.S. Fire policy provided coverage only for business use of nonowned autos.

### Other Relevant Factors

Although Ludwig was using Couture's vehicle for business purposes, this is not a case similar to *Garrick*, in which an automobile insurer had been held primarily liable for an accident involving a commercial truck. State Farm, in fact, specifically agreed to provide coverage for business use. By its very nature, pizza delivery is the sort of use of a personal automobile that an individual's insurer ought to anticipate.

We conclude the trial court erred in finding the U.S. Fire policy primary. The State Farm policy was intended to provide coverage for precisely what occurred in this case. The U.S. Fire policy was not intended to provide primary liability coverage for Jermike's driver employees.

### DECISION

Ludwig was not an insured under the U.S. Fire policy and, even if the U.S. Fire policy provided coverage, it would be secondary to State Farm's coverage.

Reversed.