**NORTHLAND INSURANCE COMPANY,**
Respondent,

v.

**CONTINENTAL WESTERN
INSURANCE COMPANY,**
Appellant.

No. C0–96–210.

Court of Appeals of Minnesota.

June 25, 1996.

Jarett B. Decker, Maun & Simon, St. Paul, for Respondent.

Michael E. McNee, Andrea E. Reisbord, Cousineau, McGuire & Anderson, Minneapolis, for Appellant.

Considered and decided by PARKER, P.J., and RANDALL and SCHULTZ *, JJ.

## OPINION

PARKER, Judge.

The district court concluded that because the two insurance policies at issue could be applied consistently, it was unnecessary to look beyond the policies in order to determine which party was responsible for primary coverage. Appellant Continental Western Insurance Company challenges the district court's decision, arguing that even where "other insurance" clauses may be applied consistently, a court must still engage in a "total policy insuring intent" analysis or a "closer to the risk" analysis to determine allocation of coverage. Appellant maintains that where an insured lessor of a vehicle agrees to indemnify a lessee for damages that are a consequence of the lessor's negligence and agrees to provide insurance for the lessee, the lessor's insurer is responsible for primary coverage regardless of whether the lessor was negligent and despite contrary language contained in both the lessor's and the lessee's insurance policies. We affirm.

## FACTS

On May 21, 1993, Schwen Trucking Co. (Schwen) entered a long-term equipment lease with Erkel Transfer, Inc. (Erkel), leasing one of its trucks to Erkel for an initial term of one year and giving Erkel exclusive possession and control of the truck during the lease period. Erkel subsequently entered into a short-term trip lease with Ranger Trucking Service, Inc. (Ranger). The trip lease provided that the truck would be driven by Raymond Ince, a Schwen employee. The trip lease also provided that the driver would supply all worker's compensation, cargo, collision, and liability insurance. Erkel agreed to indemnify and hold Ranger harmless for all personal injury claims resulting from the use of the equipment and as a result of Erkel's negligence. Erkel also agreed to furnish Ranger with a certificate of insurance naming Ranger as an additional insured. The lease did not explicitly address allocation of primary and excess coverage.

On December 8, 1993, Ince was driving the truck pursuant to the trip lease when he was involved in an accident with another vehicle. The driver of the other vehicle sued Ranger, Erkel, Schwen, and Ince. At the time of the accident, Ranger was the named insured under a Continental Western Insurance Company commercial auto insurance policy. Erkel was the named insured under a Northland Insurance Company trucker's insurance policy. The truck was scheduled on the Northland policy, which also had an endorsement naming Ranger as an additional insured.

In April 1995, Northland commenced a declaratory judgment action seeking a ruling that Continental's policy was primary with respect to each of the defendants. The district court granted Northland's motion for summary judgment and denied Continental's cross-motion, concluding on the basis of the policies that Continental had the primary duty to defend and indemnify all defendants in the lawsuit. Continental appeals, alleging that the district court erred by refusing to look beyond the "other insurance" clauses contained in both policies and because both Minnesota's No–Fault Act and the trip lease between Erkel and Ranger required Northland to provide primary coverage. Continental also moves this court to strike portions of Northland's brief because they allegedly

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

raise arguments not made below and refer to matters outside of the record.

## ISSUES

I. Must a court look beyond consistent "other insurance" clauses in overlapping insurance policies to determine allocation of coverage?

II. Does Minnesota's No–Fault Act determine primary coverage in this case?

III. Does the trip lease agreement between Erkel Transfer and Ranger Trucking Service determine primary coverage?

IV. Does Northland raise new issues on appeal and impermissibly refer to matters outside of the record?

## DISCUSSION

■ On appeal from summary judgment, this court asks:

(1) whether there are any genuine issues of material fact, and

(2) whether the lower courts erred in their application of the law.

*State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

■ The interpretation of insurance policies involves questions of law which are subject to *de novo* review. *National Family Ins. v. Bunton,* 509 N.W.2d 565, 567 (Minn. App.1993). The interpretation of a statute is also a question of law that is fully reviewable by this court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

### I.

■ The district court concluded that defendants in the relevant lawsuit were covered by both the Continental and the Northland policies. Both policies provide that liability is primary for vehicles leased to a policy holder and excess for vehicles leased from the policy holder. The court stated:

[T]he law in Minnesota is that it is only if the "other insurance" clauses are inconsistent or if apportionment cannot be made without violating one or the other of the "other insurance" clauses do the Courts look outside of the policies themselves for rules of apportionment.

Accordingly, the court concluded that because the truck involved in the accident was leased from Erkel to Ranger, Ranger's insurer, Continental, was responsible for primary coverage.

Continental does not contest the district court's conclusion that both the "other insurance" clauses can be applied consistently, and we therefore do not address that issue. Instead, Continental argues that by relying solely on the "other insurance" clauses, despite the presence of other significant insuring circumstances, the trial court failed to give effect to the intent of the parties as reflected in each party's respective policy, the lease agreement between the insureds, and Minnesota law. Continental points out that

[t]here is no talismanic rule for resolving [the] perennial problem of determining coverage of policies applicable to the same insured, vehicle, or loss situation.

*Sathre v. Brewer,* 289 Minn. 424, 428, 184 N.W.2d 668, 671 (1971). Continental cites *Federal Ins. Co. v. Prestemon,* 278 Minn. 218, 153 N.W.2d 429 (1967), for the proposition that primary coverage is to be determined

in light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy.

*Id.,* 278 Minn. at 231, 153 N.W.2d at 437. *Prestemon,* however, and the cases cited by *Prestemon* involved overlapping policies that either did not address the question of primary coverage or did so inconsistently. *Id.* In the present case, both policies provide that liability is primary for vehicles leased to a policy holder and excess for vehicles leased from the policy holder. Thus, the district court held, coverage by Erkel's insurer is excess under the "other insurance" clauses because the vehicle was leased to Ranger. Ranger's insurer was ordered to provide primary coverage because Ranger was leasing the truck from Erkel.

Citing *Hennekens v. All Nat. Ins. Co.,* 295 N.W.2d 84 (Minn.1980), Continental argues that the "total policy insuring intent" ap-

proach controls even where the "other insurance" clauses are identical and consistent. However, as Northland points out, although the "other insurance" clauses in *Hennekens* were identical, they were also in conflict because excess coverage was contemplated by both policies. *Id.* at 87. The coverage at issue was for damages exceeding the policy limits of the primary insurer. Primary coverage itself was not disputed. Because the "other insurance" clauses in the remaining policies at issue did not provide an answer, the court sought to determine "which policy more directly * * * contemplated the specific risk." *Id.* The present case is distinguishable because the "other insurance" clauses are consistent as well as identical.

Continental also cites *Garrick v. Northland Ins. Co.*, 469 N.W.2d 709 (Minn.1991). That case, however, provides no guidance here because it involved three insurance companies, and although two of the companies had identical "other insurance" clauses in their policies, the third had no such clause at all. *Id.* at 711. Nonetheless, Continental relies on the case because instead of looking simply to the "other insurance" clauses, the court looked to the "primary policy risks and the primary function of each policy." *Id.* at 712. We think it is significant, however, that in *Garrick*, the court began its analysis by stating:

> When it is clear that two or more companies are among themselves liable to the insured for his loss but the apportionment among the companies cannot be made without violating the other insurance clause of at least one company, **then** the courts must look outside the policies for rules of apportionment.

*Id.* (quoting *Integrity Mutual Ins. Co. v. State Auto. & Cas. Underwriters Ins. Co.*, 307 Minn. 173, 174–75, 239 N.W.2d 445, 446 (1976)) (emphasis added). Thus, it is apparent that the *Garrick* court did not think the "other insurance" clauses in that case provided a clear and consistent answer.

Continental next cites *Richardson v. Ludwig*, 495 N.W.2d 869, 874–75 (Minn.App. 1993), *review denied* (Minn. Apr. 20, 1993). That case supports Continental's contention that the "other insurance" clauses are not always the only factors to be considered even if they are consistent. According to *Richardson,*

> an analysis of all relevant factors must be made in every case involving overlapping coverage of the same risk.

> U.S. Fire contends the other insurance clauses of the two policies can be reconciled and these clauses determine which policy is primary. The Minnesota Supreme Court has stated, however, that the language of the other insurance clauses—or even the existence of such a clause—is not dispositive.

*Id.* at 874–75 (citing *Garrick*, 469 N.W.2d at 712).

Thus, according to *Richardson,* even if the "other insurance" clauses are consistent, as with any contract, there may be other relevant factors that need to be considered. *Id.* at 871. We do not read *Richardson,* however, to mean that there will always be other relevant factors that must be considered. Such a reading would be in serious conflict with prior cases from this court. *See, e.g., Lahr v. American Family Mut. Ins. Co.,* 528 N.W.2d 257, 260 n. 6 (Minn.App.1995) ("the *Integrity* * * * analysis applies where there is a conflict among the 'other insurance' clauses"); *CPT Corp. v. St. Paul Fire & Marine Ins. Co.,* 515 N.W.2d 747, 751 (Minn. App.1994) ("Once a conflict is identified, we must apply either the 'total policy insuring intent' analysis or the 'closeness of the risk' analysis."), *review denied* (Minn. July 27, 1994); *Illinois Farmers Ins. v. Depositors Ins. Co.,* 480 N.W.2d 657, 659 (Minn.App. 1992) ("If the court determines that the 'other insurance' clauses do not conflict, the court need not undertake the *Integrity* analysis of which policy is closest to the risk."); *State Farm v. Zurich Ins. Co.,* 439 N.W.2d 751, 754 (Minn.App.1989) ("Where, as here, the policies' apportionment provisions conflict, the court * * * must determine apportionment 'in light of the total policy insuring intent' "); *Ed Kraemer & Sons, Inc. v. Transit Cas. Co.,* 402 N.W.2d 216, 221 (Minn.App. 1987) ("Policies in conflict are stacked in relation to their 'closeness to the risk.' "), *review denied* (Minn. May 18, 1987); *Eckblad v. Farm Bureau Mut. Ins. Co.,* 371 N.W.2d

78, 81 (Minn.App.1985) ("*Integrity* applies when the 'other insurance' clauses of two or more insurers of a given risk are found to conflict or when there are no provisions to apply."), *review denied* (Minn. Sept. 26, 1985). Because the "other insurance" clauses in this case can be applied consistently, we hold that the district court did not err by declining to employ a "total policy insuring intent" analysis or a "closer · to the risk" analysis.

## II.

■ As Continental has pointed out, however, consistent "other insurance" clauses will not always be necessarily dispositive. We therefore address the question of whether Continental has raised other relevant considerations in this case. Continental argues that the "other insurance" clauses are not the most complete expression of the parties' intent and that the court should consider the lease agreement between Erkel and Ranger. Continental cites *Garrick*, but in that case, although the court did mention the existence of the lease agreement between the insureds, the court did not consider the terms of the lease itself in arriving at its decision: "The parties seem to agree that the language of the lease is not important for a determination of this case." *Garrick*, 469 N.W.2d at 711. Thus, *Garrick* is not very helpful to the present case.

Continental also cites *Sathre*. As was the case in *Garrick*, the *Sathre* court did mention the lease between the insureds and called it a "significant insurable circumstance." *Sathre*, 289 Minn. at 430, 184 N.W.2d at 671. However, the court did not purport to be looking to the lease for guidance on apportionment despite consistent "other insurance" clauses.

In response to Continental's argument, Northland cites *Railhead Freight Systems, Inc. v. United States Fire Ins. Co.*, 924 F.2d 994 (10th Cir.1991), a case that is closely on point with the present case and provides a persuasive rationale:

> United States Fire nevertheless argues that the Independent Contractor Operating Agreement contains language that indemnifies its insured, Kroblin, and that the indemnification should render Integral's

policy primary. Primary coverage between insurance policies, however, is not determined by contractual arrangements between their insureds not covered under their policy.

*Id.* at 997 (citing *Carolina Casualty Ins. Co. v. Transport Indem. Co.*, 488 F.2d 790, 794 (10th Cir.1973)). We note that the contracts under which recovery is being sought are the insurance policies themselves, not the trip lease agreement. Accordingly, we find it unnecessary to look to an agreement to which neither Northland nor Continental was a party and that, in any case, does not provide a clear answer to apportionment. The trip lease agreement does not explicitly address the issue.

## III.

■ Continental argues that because Northland's policy provides that any provision that is in conflict with state law is amended to conform to the law, Northland is required to provide primary coverage because its insured is a statutory owner under Minnesota's No–Fault Act and is thus required to provide insurance. However, Minnesota courts have not construed the No–Fault Act in this manner. As Northland points out, a similar argument was rejected in *American Family Mut. Ins. Co. v. Universal Underwriters Ins. Co.*, 438 N.W.2d 701, 703–04 (Minn.App.1989) (holding that the purpose of the No–Fault Act is to relieve economic distress of uncompensated victims and that the insurance policies themselves control the issue of apportionment).

Continental, nonetheless, cites *United States Fire Ins. Co. v. Fireman's Fund Ins. Co.*, 461 N.W.2d 230 (Minn.App.1990), *review denied* (Minn. Dec. 17, 1990), arguing that the No–Fault Act is determinative of priority. Although it is true that the court relied on motor carrier regulations and the No–Fault Act in determining priority in that case, the court explicitly held that the "other insurance" clauses in that case were in conflict. *Id.* at 233.

## IV.

Finally, Continental moves this court to strike various portions of Northland's brief

either because they raise new issues in this court or because they refer to matters outside of the record. In its brief, Northland argues that this court should adopt an Insurance Services Office (ISO) bright-line rule regarding consistent "other insurance" clauses. Although we agree with Continental that it is inappropriate for Northland to assert ISO's position for the first time on appeal, we do not think that Northland is precluded from arguing for a bright-line rule regarding apportionment in cases where there are consistent "other insurance" clauses. Accordingly, we order that any characterization of the bright-line rule as an "ISO rule" be stricken from respondent's brief. We also order stricken the parenthetical describing alleged statements made by counsel for Continental because the statements do not appear to be anywhere in the record.

We find no justification, however, for striking references in Northland's brief to briefs submitted in connection with a 1989 Court of Appeals case, *American Family Ins.,* 438 N.W.2d at 701, because those briefs are a matter of public record, and they are not offered as evidence in this case, but merely to help the court better understand the decision in that case. For the same reason, we decline to strike portions of Northland's appendix wherein sections of the above-mentioned briefs are reproduced.

## DECISION

It was unnecessary for the district court to go beyond the policies themselves to determine allocation of coverage in this case because the "other insurance" clauses contained in the policies could be applied consistently. Regarding this issue, neither Minnesota's No–Fault Act nor the trip lease agreement between Erkel Transfer and Ranger Trucking Service overrides the consistent and unambiguous terms of these insurance policies. The district court's order is affirmed.

**Affirmed.**