# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 99-3455/3460,
Nos. 00-1267/1268/1347

_____

| | | |
|---|---|---|
| Continental Casualty Company, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Auto-Owners Insurance Company, | * | |
| | * | |
| Appellant/Cross-Appellee, | * | |
| | * | Appeal from the United States |
| | * | District Court for the District |
| Interstate Fire and Casualty Company, | * | of Minnesota. |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | |
| | * | |
| and Pacific Insurance Company, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 16, 2000

Filed: December 27, 2000

_____

Before WOLLMAN, Chief Judge, and BEAM and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This case arose out of a serious injury suffered by a worker who was engaged in the salvage operation of a derailed Burlington Northern Railway train. The worker, an employee of Fitzsimmons Service Company, which the railroad had hired to salvage goods from its derailed cars, sued (among others) Burlington Northern and Hulcher Services, Inc., a contractor whose job it was to stabilize the derailed cars so that the salvage operation could proceed. The case was settled and four insurance companies funded the settlement.

One of those insurance companies, Continental Casualty Company, sued for a declaratory judgment as to which of the insurers was liable for that part of the settlement that Burlington Northern obligated itself to pay. The district court held that the insurers with whom Fitzsimmons contracted, Auto-Owners Insurance Company and Interstate Fire and Casualty Company, were liable, respectively, for one-third and two-thirds of Burlington Northern's obligation. Auto-Owners and Interstate appeal the order of the district court. We affirm in part and reverse in part.

I.

Continental was the comprehensive general liability (CGL) carrier for Hulcher, and Pacific issued what the railroad industry calls a railroad protective policy, which Hulcher paid for, in favor of Burlington Northern; Auto-Owners was the CGL carrier for Fitzsimmons, and Interstate supplied a railroad protective policy to Burlington Northern, which Fitzsimmons paid for. All of these various insurance arrangements were required by the contracts that Hulcher and Fitzsimmons entered into with Burlington Northern with respect to righting and salvaging the derailed train cars. We therefore have six contracts that are central to the resolution of this case.

We begin with a consideration of Continental's position in this dispute. Continental's policy with Hulcher promised, as relevant here, that it would pay Hulcher

"those sums that [Hulcher] becomes legally obligated to pay because of 'bodily injury' ... to which this insurance applies," if that obligation arose under an "insured contract," that is, "any ... contract or agreement pertaining to your business ... under which you assume the tort liability of another party." Hulcher's contract with Burlington Northern, in turn, contained an indemnity provision in Burlington Northern's favor, which would make that contract an "insured contract" within the meaning of Continental's policy with Hulcher, but in the contract with Burlington Northern, Hulcher agreed to indemnify Burlington Northern only for liability for an injury "caused, in whole or in part, by the negligence of [Hulcher]."

As the district court noted, Hulcher was granted summary judgment in the underlying employee's action because no evidence was presented in that action that Hulcher was negligent in its salvage operations or that Hulcher's negligence caused the employee's injuries. In such circumstances, the district court held (and we agree) that it is plain that Continental cannot be liable for any of the settlement by Burlington Northern because Burlington Northern has no right to an indemnity from Hulcher.

Nor can Pacific be liable. Pacific promised to pay Burlington Northern for "bodily injury" that arose "out of acts or omissions ... which are related to or are in connection with the 'work' described in the Declarations." The policy further describes "work" as "work or operations performed by the 'contractor,' " and the "contractor," of course, is identified as Hulcher. The relevant part of the policy therefore covers only liabilities arising from work that Hulcher performed. While we do not think that coverage under Pacific's policy would necessarily depend on proof of any negligence or even causation on Hulcher's part, Pacific's policy does require a nexus between the injury and Hulcher's work; and we discern nothing in this record to show that the employee's injury arose in any context other than Fitzsimmons's work. The district court therefore correctly held that Pacific had no legal duty to contribute to the settlement.

II.

The remaining questions have to do with Interstate and Auto-Owners, the insurers with whom Fitzsimmons dealt. It bears emphasis at the outset that Burlington Northern, not Fitzsimmons, is the insured under Interstate's railroad protective policy, although Fitzsimmons paid for it; this was, as we have said, in keeping with the contract between Burlington Northern and Fitzsimmons. There can be no dispute that this policy covers the losses associated with the employee's injury, because it undertakes to pay "those sums that [Burlington Northern] becomes legally obligated to pay because of 'bodily injury' " that arose from "operations performed by the contractor." The contractor referred to, of course, was Fitzsimmons, and the employee's injury occurred while he was engaged in the salvage operation that was the subject of the contract.

Auto-Owners's CGL policy, as relevant here, promised to pay Fitzsimmons" "those sums that [Fitzsimmons] becomes legally obligated to pay as damages because of 'bodily injury,' " if that obligation arose under Fitzsimmons's contract to indemnify Burlington Northern for sums that it had to pay on account of injuries arising from Fitzsimmons's work. Since the worker's injury arose from Fitzsimmons's work, and Fitzsimmons promised to indemnify Burlington Northern for such injuries, the Auto-Owners policy also covers the loss.

After correctly holding that the policies of both Interstate and Auto-Owners covered the amount that Burlington Northern agreed to pay under the settlement, the district court then proceeded to decide how to apportion that loss between them. *See Integrity Mutual Insurance Co. v. State Automobile and Casualty Underwriters Insurance Co.*, 239 N.W.2d 445, 446-47 (Minn. 1976). We think that the district court erred in apportioning the loss between the two insurers because it failed to give proper effect to what Interstate's policy calls a "Transfer of Rights of Recovery" clause. That clause, ordinarily called a subrogation clause, provides that if Burlington Northern "has

rights to recover all or part of any payment we [*i.e.*, Interstate] have made under this policy, those rights are transferred to us."

One such right to recover that Burlington Northern has is through the indemnity clause in its contract with Fitzsimmons, a clause to which we have already alluded, which provided that Fitzsimmons would save Burlington Northern harmless from "any and all claims ... on account of injury ... arising or growing out of or in any manner connected with the work performed under this contract." In this way, we believe that Interstate, being subrogated to Burlington Northern's rights, can reach Fitzsimmons and, through it, Fitzsimmons's CGL carrier, Auto-Owners.

In other words, we hold that Auto-Owners is obligated to bear the entire loss, and not, as the district court concluded, just a portion of it. This result, we think, is dictated by ordinary contract principles, and is also in keeping with the understanding of those who are familiar with the railroad industry and the way that salvage operations work there. According, for instance, to one standard reference, the insurer of the railroad has "the right to recover from a liable third party the amounts paid as claims against the [railroad]," *Commercial Liability Insurance* (International Risk Management Institute, Inc.), at VI.R.8 (July, 1999). (Although Interstate claims to be entitled to subrogation against Hulcher as well, Interstate may not reach Continental because Hulcher's indemnity clause is narrower than Fitzsimmons's and, as we have already said, the injury did not arise out of Hulcher's work.)

Auto-Owners argues that to allow Interstate to reach through the salvage contract and create a liability on Fitzsimmons's part, and, eventually, on Auto-Owners's part as well, would violate the familiar rule against allowing an insurer to subrogate against its own insured. We of course recognize the general principle, *see United States Fire Insurance Co. v. Ammala*, 334 N.W.2d 631, 634 (Minn. 1983), but we conclude that the result that we reach in this case does not violate it. As we have already emphasized, Interstate's insured is not Fitzsimmons, it is Burlington Northern, and

Interstate is being subrogated to Burlington Northern's rights against Fitzsimmons. We think that the fact that Fitzsimmons paid the premiums of the Interstate policy is of no moment; what is important is that Fitzsimmons is not the insured under that policy. In other words, in circumstances like the present ones, "[t]he principle ... that an insurer may not subrogate against its own insured does not operate to protect the purchaser of the policy [the contractor] ... since the designated contractor is not an insured under the policy," *Commercial Liability Insurance*, at VI.R.8 .

Auto-Owners directs our attention to *Northland Insurance Co. v. Continental Western Insurance Co.*, 550 N.W.2d 298, 300 (Minn. Ct. App. 1996), which held that a provision in the lease of a truck whereby the lessor undertook to indemnify the lessee for damages caused by the lessor's negligence did not alter the fact that the lessee's insurer's coverage was primary. The court in that case noted, however, that "the contracts under which recovery is being sought are the insurance policies themselves, not the ... lease agreement [in which the indemnity clause appears]," *id.* at 302.

The present action, however, as we noted at the beginning of our consideration of this case, is founded not just on the insurance policies but also on the agreements between Burlington Northern and its contractors. *Cf. Railhead Freight Systems, Inc. v. United States Fire Insurance Co.*, 924 F.2d 994, 996 (10th Cir. 1991). The issue in our case is what insurer or insurers, under all of the relevant contracts, must ultimately pay Burlington Northern's portion of the settlement of the injured employee's action, and, as we have said, we believe that it is Auto-Owners that must do so.

We have examined the other authorities that Auto-Owners urges on us and have found them not to be apposite.

## IV.

For the reasons indicated, we affirm the district court's order in part and reverse it in part, and we remand for entry of an order consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.